**In re PERDIDO MOTEL GROUP, INC., Debtor.**

**Bankruptcy No. 88–05976(11).**

United States Bankruptcy Court, N.D. Alabama.

June 5, 1990.

Thomas J. Knight, Anniston, Ala., for debtor.

Harry P. Long, Anniston, Ala., for stockholders.

Donald M. Wright, Birmingham, Ala., for Florida National Bank.

FINDINGS AND CONCLUSIONS ON APPLICATION FOR ALLOWANCE OF ADMINISTRATIVE EXPENSES

L. CHANDLER WATSON, Jr., Bankruptcy Judge.

*Introduction*

The above-styled case was commenced by the corporate debtor's voluntary petition under title 11, chapter 11, United States Code, filed June 22, 1988, and remains

pending before this Court under said chapter.

The debtor was organized for the purpose of constructing and operating a 100–room motel near the Gulf beaches in the Florida Panhandle. Funds for construction of the motel were obtained through the proceeds of sale of $4,400,000 in "industrial-development" bonds, with Florida National Bank acting as "bond trustee." The motel was constructed and began operations but failed to achieve financial success, due in part to a general downturn in the economy of the area in which it was located. An early default occurred in the debtor's payments on the bonds, which were secured by a first mortgage on the motel property, and this bankruptcy case quickly followed. The debtor and the bank battled at length over the value of the motel property, which the Court found to have a value of $1,150,000, leaving the bank, as trustee, with an unsecured claim in the sum of $3,740,000.

Consistently, since its inception to the present, the case has been marked by the most contentious squabbles between the bank and the debtor. At the present time, the bank has on appeal to the district court a second-round confirmation (September 1, 1989) of the debtor's plan of reorganization. On February 28, 1989, the district court dismissed the bank's appeal from the bankruptcy court's orders on the bank's motions for relief from the stay and to have the case dismissed. A preference action by the debtor against the bank has been concluded in favor of the bank, a request by the bank for sanctions against the debtor's attorney has been transferred to another bankruptcy judge, the bank has objected to the allowance of compensation to the attorney for the present equity security holders, and the bank has objected to the latest compensation sought by the attorney for the debtor, with the debtor's attorney having subpoenaed the bank's attorneys and their fee records. Countless other matters—motions, applications, objections, discovery requests and notices, and briefs—clutter the clerk's files for this case. To say that the dispute between the debtor and the bank has been over-litigated is to make a statement not subject to meaningful contradiction.

This case is presently under consideration by the Court on the application for allowance of compensation and reimbursement of expenses by the attorney for the successor equity security holders and the bank's objection thereto. The attorney argues that such compensation and expenses should be allowed as "administrative expenses" in this case, pursuant to the provisions of 11 U.S.C. § 503. The bank says that during a substantial part of the time involved, the attorney's clients were neither equity security holders nor creditors and, obviously, not being "an indenture trustee ... or committee," the successor equity security holders cannot be allowed an administrative expense "in making a substantial contribution in [the] case," as provided for in § 503(b)(3)(D).

*Findings of Fact*

To find the facts on this issue, the Court must turn to the affidavit of the attorney in support of the application for an award of compensation and allowance of reimbursement of expenses and upon the matters hereinafter referred to which appear from the case file and of which the Court will take judicial notice. The Court finds these facts as follows:

1. The debtor's chapter 11 case was commenced January 22, 1988, and its initial plan of reorganization was denied confirmation by the Court's order of June 1, 1989;

2. Confirmation was refused for the reasons set out in this Court's opinion, reported as *In re Perdido Motel Group, Inc.,* 101 B.R. 289 (Bankr.N.D.Ala.1989);

3. At that point, the parents of the equity security holders (two brothers) undertook an active and aggressive role in the case by taking charge of the debtor's efforts to achieve a financial reorganization in this case, with the tacit approval of the two stockholders;

4. These efforts included an increase in their financial investment in the case from $1,000 to $50,000 and their making a personal guarantee of the debtor's payment of

a balance of $1,100,000 of the bank's secured claim;

5. These efforts also resulted in a plan which proposed a payment of $120,000 (in monthly installments of $1,000) to holders of allowed unsecured claims in contrast to the original plan to pay these creditors $15,000 (at a rate of $125 per month);

6. After approval and dissemination of a new disclosure statement and a lengthy hearing, the new plan, as amended several times, was confirmed over the objection of the bank;

7. The postconfirmation efforts of the successor stockholders of the debtor have been directed toward implementation of the confirmed plan and in opposing the bank's appeal of the order of confirmation;

8. All of these efforts have been conceived, directed, and carried out by Harry P. Long, Esquire, acting as legal counsel for the successor stockholders (who have funded and guaranteed the debtor's plan obligations to the bank), in concert with the attorney for the debtor;

9. These efforts of the successor stockholders have made a substantial contribution in the case, toward its purpose of achieving a financial reorganization of this debtor;

10. The application seeks an award of $15,996.50 as compensation for 139.1 hours of the attorney's time and of $189 as compensation for 5.25 hours of paralegal's time and the reimbursement of $1,220.47 in out-of-pocket expenses, in providing these efforts; and

11. The bankruptcy administrator recommends that the applicant be compensated and reimbursed in the amounts requested.

### Conclusions of Law

The application was submitted by Harry P. Long, Esquire, the attorney for "James L. Deupree and Ann H. Deupree and Deupree Gas Company." In § 503(b)(4) an attorney is given a separate status to make an application for compensation himself as has been done in this case. James L. Deupree and Ann H. Deupree are the successor stockholders. While Attorney Long contended that his efforts in this case were also made on behalf of the unsecured claimholder, Deupree Gas Company, which was owned by one or both of the successor stockholders, this contention is ethereal and ectoplasmic and contradicted by finding of fact number 8.

█ The bank contends that Long may not request compensation and reimbursement of expenses as an administrative expense for work done prior to September 29, 1989, the day that Long's clients became the stockholders of the debtor corporation. The Court shall allow as an administrative expense, after notice and a hearing "reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, ... and reimbursement for actual, necessary expenses incurred by such attorney ..." 11 U.S.C. § 503(b)(4). The entities whose expenses are allowable under paragraph (3) include "a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title; or ... a custodian" 11 U.S.C. § 503(b)(3). The bank insists that Long did not represent any entity listed in § 503(b)(3) until his clients became equity security holders on September 29, 1989, and that any claim for compensation accrued prior to that date should not be allowed as an administrative expense.

The bank's position is supported by Judge Mahoney's opinion in *In re 1 Potato 2, Inc.*, 71 B.R. 615 (Bankr.D.Minn.1987). In *1 Potato 2*, an attorney for a successor shareholder was not allowed to be compensated as an administrative expense prior to the time that his client acquired stock in the debtor corporation. The bankruptcy judge stated that the "statute clearly defines those to be compensated".

However, § 503(b) does not recite a cut-and-dried list of entities only that should be allowed administrative expense treatment for reasonable compensation for their at-

torneys. Instead, the list of entities contains merely examples which should be expanded when appropriate. The subsections of § 503(b) are introduced by the following statement: "After notice and a hearing, there shall be allowed administrative expenses, ... including". The use of the word "including" indicates that the categories mentioned in Subsection (b) are *not* all inclusive. *I Norton, Bankruptcy Law & Practice* § 12.01 (1989). In 11 U.S.C. § 102(3) "including" is construed as not being a word of limitation. Therefore, the use of the term "including" to modify the subsections of § 503(b) indicates that other categories or items could qualify as an administrative expense. 3 *Collier on Bankruptcy* § 503.03 (15th ed. 1989). The instant case reveals an appropriate set of circumstances to qualify work done by the successor stockholders' attorney as an administrative expense regardless of whether the successor stockholders were stockholders at the time their attorney's work made a substantial contribution to the case.

▪ The bank further contends that this application for reimbursement of expenses and allowances of professional fees should be denied because the disclosure statement did not reveal that this attorney would be paid by the corporate debtor. In *In re Seneca Oil Co.*, 65 B.R. 902 (Bankr.W.D. Okla.1986), an application by a creditor's attorney for expense reimbursement and compensation was denied because the disclosure statement did not specify that said attorney would be paid from the estate assets. The bankruptcy court stated that "[n]ondisclosed entities will be denied compensation unless the disclosure is immaterial or the fees and expenses unforeseeable." *Id.* at 907.

In the instant case, the nondisclosure of Long's intent to seek allowance of his professional fees and expenses was immaterial. The confirmed plan provides for specific amounts to be paid to both the secured and unsecured claimholders. These amounts will not vary if Long's professional fees and expenses are allowed as an administrative expense in this case. The statement made by the bank's counsel that "unsecured creditors such as FNB essentially bear the brunt of payment of administrative expenses" is unsupportable. Therefore, the nondisclosure of Attorney Long's intent to have these fees paid by the corporate debtor as an administrative expense is immaterial and will not bar the allowance of his application.

▪ Finally, the bank argues that an application for administrative expenses must be submitted prior to the effective date of the plan and that a postconfirmation administrative expense award is improper. In *In re Sultan Corp.*, 81 B.R. 599 (9th Cir.1987), the debtor's attorney's fees for postconfirmation legal services were determined to be compensable as an administrative expense under 11 U.S.C. § 503(b)(2). The appellants argued that the postconfirmation fees and expenses should not be allowed as an administrative expense under § 503(b)(2) because the estate ceased to exist when the property of the estate vested back into the debtor upon confirmation of the plan. The Court noted that § 503(b)(2), unlike § 503(b)(1), does not refer to the estate.

Similarly, § 503(b)(3) and § 503(b)(4) do not require that administrative expenses be incurred by the estate. Instead, § 503(b)(3)(D) requires that an entity make a substantial contribution in the "case". In the instant case, the plan provided that administrative expenses would be paid in full as the orders allowing such claims become final. The plan further provided that this Court would retain jurisdiction "to insure that the purpose and intent of this plan are carried out until the provisions of the plan have been completed." Therefore, the reasonable preconfirmation and postconfirmation expenses and compensation claimed by the stockholders' attorney (who the bank concedes made a substantial contribution in the case) will be allowed.

An order conforming hereto will be entered.