**In re Joseph A. FERRETTI, Debtor.**

**Bankruptcy No. 89–10846.**

United States Bankruptcy Court,
D. New Hampshire.

June 4, 1991.

William Gannon, Wadleigh, Starr, Peters, Dunn & Chiesa, Manchester, N.H., for debtor.

## AMENDED MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

This case came on for a disclosure statement hearing on April 30, 1991 pursuant to 11 U.S.C. § 1125(a). I disapproved the proposed statement at that time. Because this disclosure statement is typical in many respects of the kind of disclosure statements this Court has been receiving, and finding objectionable, I have taken leave to discuss in an opinion much of what is required in disclosure statements in this Court.

## OVERVIEW

■ The purpose of a disclosure statement is to provide "adequate information" to creditors to enable them to decide whether to accept or reject the proposed plan. The phrase "adequate information" has been deliberately left vague by Congress to give a bankruptcy court "wide discretion to determine on a case by case basis" whether the disclosure is reasonable. *In re Dakota Rail, Inc.*, 104 B.R. 138, 143 (Bankr.D. Minn.1989).

■ Many courts have adopted an extensive list of the type of information often needed in disclosure statements for guidance in drafting disclosure statements. See, e.g., *In re Cardinal Congregate I,* 121

B.R. 760 (Bankr.S.D.Ohio 1990); *In re Dakota Rail, supra; In re Microwave Products of America, Inc.,* 100 B.R. 376 (Bankr. W.D.Tenn.1989); *In re Scioto Valley Mortgage Co.,* 88 B.R. 168 (Bankr.S.D.Ohio 1988); *In re Metrocraft Publishing Serv., Inc.,* 39 B.R. 567 (Bankr.N.D.Ga.1984). Those features which I believe should be considered for inclusion by disclosure statement drafters are as follows:

1. The circumstances that gave rise to the filing of the bankruptcy petition;

2. A complete description of the available assets and their value;

3. The anticipated future of the debtor, with accompanying financial projections;

4. The source of the information provided in the disclosure statement;

5. The condition and performance of the debtor while in chapter 11;

6. Information regarding claims against the estate, including those allowed, disputed, and estimated;

7. A liquidation analysis setting forth the estimated return that creditors would receive under chapter 7;

8. The accounting and valuation methods used to produce the financial information in the disclosure statement;

9. Information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor;

10. A summary of the plan of reorganization;

11. An estimate of all administrative expenses, including attorneys' fees and accountants' fees;

12. The collectibility of any accounts receivable;

13. Any financial information, valuations or *pro forma* projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

14. Information relevant to the risks being taken by the creditors and interest holders;

15. The actual or projected value that can be obtained from avoidable transfers;

16. The existence, likelihood and possible success of nonbankruptcy litigation;

17. The tax consequences of the plan;

18. The relationship of the debtor with affiliates.

This list is by no means comprehensive. Nor must every debtor provide all the information on the list. The Court will decide what is appropriate in each particular case.

█ Yet, information that is provided must be clear and comprehensible. I have previously ruled that disclosure statements should not contain overly technical language that the average creditor cannot readily understand. See *In re Waterville Timeshare Group*, 67 B.R. 412 (Bankr.D. N.H.1986). Other courts have agreed. See, e.g., *In re Cardinal Congregate I, supra*, at 766; *In re Scioto Valley Mortgage Co., supra* at 171. Indeed, one recent court has adopted "the Plain English Disclosure Statement Rule." *In re Dakota Rail, supra*, at 150. Another Court aptly phrased this requirement as follows:

The burden of deciphering the meaning of the treatment of a claim should not be placed upon a creditor inexperienced with the technicalities of bankruptcy law at this early stage of a bankruptcy proceeding.

\*   \*   \*   \*   \*   \*

Thus, it is important for these average investors/general unsecured creditors that the Disclosure Statement contain simple and clear language delineating the consequences of the proposed plan on their claims and the possible Code alternatives so that they can intelligently accept or reject the Plan.

*In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 981 (Bankr.N.D.N.Y.1988). See generally Phelan and Cheatham, "Would I Lie to you?—Disclosure and Bankruptcy Reorganizations", 9 *Securities Regulation Law J.* 140 (1981) (subtitled "If we make it thick enough maybe no one will read it.")

█ In short, a proper disclosure statement must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution. This disclosure statement fails this test.

*Specific Problems*

█ 1. This disclosure statement is not titled "Amended" which it should be since it is amended from a previous statement.

█ 2. This disclosure statement buries the treatment of creditors in general discussion about what the Bankruptcy Code provides or what the plan provides. A disclosure statement should not repeat these provisions, but should disclose their effect and their meaning in a particular case. (A general reference to a statutory provision may be acceptable.) For example, if there is treatment of certain kinds of administrative claims in a certain class, it is not necessary to inform the reader that the statute provides for priority treatment. It is only necessary to tell them what are the approximate amount of administrative claims in the estate and how that class will be treated.

█ 3. In regards to general unsecured claims, a disclosure statement should not say, as this one does, that if all claims are allowed each creditor will get ten percent. Rather, the statement should inform the reader what the undisputed claims are, what the disputed claims are, what effect, if any, there will be on the distribution if disputed claims are or are not allowed, and when will distribution be made. This requires a total dollar amount projected for the undisputed claims, and a total dollar amount projected for the disputed claims should they be allowed over objections.

█ 4. The disclosure statement states what the claims bar date is, and then it states "if the Court extends the Bar Date for filing any given claim, the date so set shall be the Bar Date, but only with respect to such claim." I am unaware that the claims bar deadline is material in this case, but if it is material then this should be

made more specific. This Court will very rarely modify the claims deadline except upon a very strong showing that a particular creditor should get some special treatment that other creditors do not get so I do not see the need for such a provision in a disclosure statement.

■ 5. The disclosure statement provides a paragraph stating that no other disclosure should be provided to voters as to the affairs of the debtor other than what is in this disclosure statement. This is contrary to *Century Glove, Inc. v. First American Bank of New York*, 860 F.2d 94, 100 (3d Cir.1988), which held:

> Section 1125 seeks to guarantee a minimum amount of information to the creditor asked for its vote.
>
> \*  \*  \*  \*  \*  \*
>
> The provision sets a floor, not a ceiling. Thus we find that § 1125 does not on its face empower the bankruptcy court to require that all communications between creditors be approved by the Court.

Of course, this does not give parties a license to solicit votes based on falsehoods. When that occurs, the Court must use its equitable powers. See, e.g., *In re Media Central, Inc.*, 89 B.R. 685 (Bankr.E.D. Tenn.1988); *In re Gulph Woods Corp.*, 83 B.R. 339 (Bankr.E.D.Pa.1988).

6. The disclosure statement states in a paragraph that much of the information has not been subject to a certified audit so the debtor warrants or represents all the information is accurate. Obviously there is a "not" missing in the latter part of this statement.

■ 7. The disclosure statement has a section entitled "Brief Explanation of Chapter 11." These paragraphs are verbose and have nothing to do with the average creditor figuring out whether to vote for the plan. In particular, I do not like creditors being told in effect that their vote doesn't matter because the Court can approve the plan over their vote anyway. For the average unsecured creditor it is quite confusing and inappropriate to solicit their vote and then go through a long litany as to why their vote doesn't mean anything anyway.

■ 8. This disclosure statement has "special" definitions which relate to this plan, and "general" definitions which are simply a regurgitation of what the Bankruptcy Code provides and/or what the plan provides. These latter definitions are not necessary for disclosure statement purposes. It is counterproductive because it buries within those verbose provisions the things the average creditor wants to know about the nature of their claim, treatment, and whether they should vote for the plan. The more sophisticated creditors will already be aware of the detail of Bankruptcy Code provisions.

■ 9. This disclosure statement states "the information regarding the debtor and the debtor's operations is qualified and supplemented by the information and financial reports submitted to this Court by the debtor." This is inappropriate and should not be in a disclosure statement. If something in those financial reports is important enough to be specifically referenced, it should be specifically disclosed in the disclosure statement, with annexed exhibits only if absolutely necessary. You cannot expect general creditors to go through various reports submitted to the court over the history of the case and try to figure out what qualifications and what supplementation might be there from what they read in the disclosure statement. Other courts have agreed. See, e.g., *In re Cardinal Congregate I, supra*, at 767.

10. The discussion regarding the treatment of Numerica Savings Bank's claim needs a more descriptive and specific treatment. At this time, I will leave it to the parties to negotiate.

■ 11. The executory contract provisions is boiler plate language that doesn't tell you anything about this case. It states:

> Except for any unexpired leases or executory contracts as to which the debtor, prior to confirmation, has applied to the Court for assumption, or assumption and assignment, all unexpired leases and ex-

ecutory contracts to which debtor is party shall be automatically rejected on confirmation, without further action by the debtor.

This provision should be made more specific. If there is nothing to reject that should be stated. If there is something to reject that should be stated along with the possible unsecured claim that might come out of that rejection.

 12. The section entitled "Effect of Confirmation" states the debtor shall be discharged from personal liability. This is unnecessary. This is an individual debtor, and, therefore, it simply is a discharge of the debtor from liability under the provisions indicated. The further statement that whether or not a proof of claim was timely filed or whether or not a claim was scheduled or listed by the debtor raises constitutional questions that this Court has not yet been called upon to rule upon and I do not want this in a disclosure statement.

13. The section entitled "feasibility of Plan" states that it is "virtually impossible to provide reasonable projections regarding Salty Dog, Inc. [a restaurant] income and expenses." It then says based on experience, however, the debtor believes the plan is feasible. This is totally inadequate for any unsecured creditor to vote on this plan. See *In re Cardinal Congregate I, supra* at 767. If it is virtually impossible to make projections then it is not possible to represent to creditors that this plan is feasible and can pay unsecured creditors ten percent of their claim.

Moreover, I don't know how I could confirm a plan that is not shown to be feasible. Maybe the debtor believes the plan provides more for creditors than they would get in liquidation. But this Court is not in the business of confirming unfeasible plans of reorganization just because it otherwise would be a liquidation with no distribution to creditors.

### Conclusion

Disclosure statements in this district must avoid boiler plate language and be specifically tailored to the individual case before the court. In addition, disclosure statements must be clear and concise. Finally, there is certain essential information that every disclosure statement should have in it. Adequate disclosure requires nothing less.