### In re SPEEDS BILLIARDS & GAMES, INC., Debtor.

### Bankruptcy No. 91–40560.

United States Bankruptcy Court,
E.D. Texas,
Sherman Division.

Jan. 12, 1993.

---

Molly W. Bartholow, Bartholow & Milbank, Dallas, TX, for Clicks Billiards, Inc.

Bill Parker, Ireland, Carroll & Kelley, P.C., Tyler, TX, for the Law firm of Ireland, Carroll & Kelley, P.C.

Marilyn R. Chambers, Dallas, TX, for F.D.I.C.

OPINION

DONALD R. SHARP, Bankruptcy Judge.

Comes now before the Court the Fee Application of Bartholow & Milbank, Attorneys for Clicks Billiards, Inc., pursuant to regular setting in Tyler, Texas. This opinion constitutes findings of fact and conclusions of law in accordance with Fed. R.Bankr.P. 7052 and disposes of all issues before the Court.

## FACTUAL AND PROCEDURAL BACKGROUND

Speeds Billiards & Games, Inc., hereinafter referred to as ("Debtor"), filed for relief under Chapter 11 of the Bankruptcy Code on March 28, 1991. Through the purchase of a small unsecured claim, one of Debtor's business competitors, Clicks Billiards, Inc., hereinafter referred to as ("Clicks"), intervened in Debtor's case for the purpose of gaining control over Debtor's business. Both parties filed proposed plans of reorganization, but in the end, it was the Clicks' plan of reorganization which was confirmed by this Court. The Clicks' plan, in pertinent part, provides for an anticipated one hundred (100%) percent payout to unsecured creditors.[1]

Clicks' attorneys of record, the law firm of Bartholow & Milbank, hereinafter referred to as ("Applicant"), filed a fee application requesting attorneys' fees in the amount of $121,746.25 and reimbursement of expenses in the amount of $19,008.88. Applicant's fee request is made pursuant to 11 U.S.C.A. §§ 503(b)(3)(D), (4) of the Code.[2] In pertinent part, Applicant asserts

---

1. As of the date of the confirmation hearing numerous objections to proofs of claim were still outstanding; many still have not been resolved. The resolution of these claims will affect the percentage dividend to unsecured creditors. Despite this uncertainty, based on Clicks' analysis, the payout to the unsecured creditors should approach 100%.

2. (b) After notice and a hearing, there shall be allowed administrative expenses ... including—

   .    .    .    .    .

(3) the actual, necessary expenses, other than compensation and reimbursement specified

in paragraph (4) of this subsection, incurred by—

   .    .    .    .    .

(D) a creditor ... in making a substantial contribution in a case under ... chapter 11 of this title ...

   .    .    .    .    .

(4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in the case under this title, and reimbursement for actu-

that it has performed a valuable service in proposing a successful liquidating plan of reorganization enabling unsecured creditors to receive, over time, approximately one hundred (100%) percent of their allowed claims. Applicant contends that its actions have rendered a substantial contribution to the successful reorganization of the case and that such efforts should be compensable from the assets of the estate. Two objections were filed in response to Applicant's application.

The first objection was filed by the Federal Deposit Insurance Corporation, hereinafter referred to as ("FDIC"). Although the FDIC's objection rested on numerous grounds, Applicant, in the interest of resolving the dispute, agreed to unilaterally reduce its requested fees to $88,000.00 as well as nominally reduce its requested reimbursement of expenses to the amount of $19,000.00. Based on that reduction, the FDIC orally withdrew its objection at the regularly scheduled hearing. The second objection is filed by the law firm of Ireland, Carroll & Kelley, P.C., hereinafter referred to as ("Claimant"). Claimant is a law firm which formally represented Debtor. Claimant has standing in this case due to its status as an administrative claimant. Like the FDIC, Claimant's objection rests on numerous grounds. Unlike the FDIC, Claimant still urges its objection. The matter was taken under advisement.

### DISCUSSION OF LAW

■ Section 503(b)(3)(D), (4) provides for the recovery by a creditor and his attorneys, as an administrative expense of the estate, of expenses related to creditor participation in a case to the extent such efforts have resulted in a substantial contribution to the advancement of the bankruptcy case. However, administrative awards pursuant to these sections are not lightly accorded. The case law is uniform that a mandatory prerequisite to such an award is a demonstration by the administrative claimant, by the preponderance of the evidence, that the claimant's efforts have re-

sulted in an actual and demonstrable benefit to the bankruptcy estate. *In re Lister,* 846 F.2d 55, 57 (10th Cir.1988); *Matter of Consolidated Bancshares, Inc.,* 785 F.2d 1249, 1253 (5th Cir.1986). Such a demonstration is necessary to overcome the presumption that the creditor's involvement in the bankruptcy case is motivated solely by self interest. *Matter of Jack Winter Apparel, Inc.,* 119 B.R. 629, 633 (E.D.Wis. 1990); *In re Standard Metals Corp.,* 105 B.R. 625, 631 (Bankr.D.Colo.1989) (It is an incongruous result to construe Section 503(b) to allow compensation to the creditors' attorneys for doing the job that their client paid them to do.). Therefore, it is axiomatic that a creditor's participation in the case which confers only incidental or indirect benefits is not compensable as an administrative expense. *Jack Winter, supra; In re U.S. Lines, Inc.,* 103 B.R. 427, 430 (Bankr.S.D.N.Y.1989).

■ In this case, Clicks has successfully proposed a liquidating plan of reorganization which will pay approximately one hundred (100%) percent of the claims of the unsecured creditors. Extensive beneficial creditor participation in the reorganization process, including the successful confirmation of a creditor's plan, has been recognized as the type of substantial contribution to a case necessary to an administrative expense award. *In re 9085 E. Mineral Office Bldg., Ltd.,* 119 B.R. 246 (Bankr. D.Colo.1990) (creditor's plan providing for a hundred percent payout to unsecured creditors confers actual, direct and demonstrable benefit to the estate); *In re Perdido Motel Group, Inc.,* 115 B.R. 340 (Bankr. N.D.Ala.1990); *In re Lehal Realty Assoc.,* 112 B.R. 588, 590 (Bankr.S.D.N.Y.1990) (the successful confirmation of a creditor's liquidation plan confers a substantial contribution upon the estate). A creditor who has made a substantial contribution to a case is entitled to an administrative expenses award even if that creditor's involvement in the case is not motivated by altruism. *In re 1 Potato 2, Inc.,* 71 B.R. 615, 618 n. 3 (Bankr.D.Minn.1987) (credi-

---

al, necessary expenses incurred by such attorney or accountant ...

11 U.S.C.A. § 503(b) (West 1979 & Supp.1992).

tor's motives in proposing to take over the debtor is not relevant; all that matters is the value of the contribution to the estate); *but see In re American 3001 Telecommunications, Inc.*, 79 B.R. 271, 273 (Bankr. N.D.Tex.1987) (suggesting that motivation of a creditor may be a relevant consideration).

In this case, it is clear that Clicks' involvement in this case was motivated by its desire to take over a business competitor. Charitably, Clicks' actions vis-a-vis Debtor can best be described as predatory and mercenary. However, it cannot be denied that Clicks' involvement has conferred a direct and demonstrable benefit to the estate which should be compensated as an administrative expense although the value of the benefit conferred by Clicks' has yet to be determined. The Court will now address the objections filed by Claimant.

■ Claimant objects to Applicant's requests for attorneys' fees based on Clicks' failure to disclose an intention to seek such attorneys' fees in Clicks' disclosure statement. As written, the disclosure statement provides only for the payment of the professional fees of the Debtor and the creditor's committee counsel which were estimated in the amount of approximately $140,000.00. Based on the Court's knowledge of previous fee applications entered in this case it is clear that even without Applicant's fee request the professional fees have been estimated too low. Two courts have addressed this issue.

In *In re Seneca Oil, Co.*, 65 B.R. 902, 906–907 (Bankr.W.D.Okl.1986) creditors who had successfully proposed a plan in debtor's case filed a request for payment of their attorneys' fees as an administrative expense. The creditor's plan did not disclose that these fees would be sought. As in this case, the plan proponents had significantly underestimated the administrative expenses. In denying the fee request the court held: "A plan proponent or purchaser of a debtor's assets who intends to apply for reimbursement of fees and expenses must specifically estimate its costs in the disclosure statement or they will be disallowed." In addition, the court

held that to the extent the administrative expenses were estimated the plan proponent should be held to those estimates. Only where the nondisclosure was immaterial or the fees and expenses unforeseeable would compensation be entertained. *Id.* at 907. The second case, while relying on the *Seneca* decision, reached a different result.

In *In re Perdido Motel Group, Inc.*, 115 B.R. 340, 343 (Bankr.N.D.Ala.1990), successor stockholders of the debtor who assisted in the confirmation of a plan and funded and guaranteed the plan postconfirmation requested attorneys' fees based on their substantial contribution to the case. As in *Seneca* the stockholders did not reveal this intention prior to confirmation. However, the court found the nondisclosure immaterial because the plan required payments to both secured and unsecured creditor's in specified amounts. The request was granted.

Based on the facts of this case, the Court finds itself somewhere between the *Seneca* and the *Perdido* holdings. If allowed, Applicant's fee request would cause the administrative expenses related to professional fees to exceed the estimated $140,000.00 by over 75%. Unlike *Perdido*, the distribution to unsecured creditors is not specific in amount but is dependent on claims' objections and the allowance of administrative expenses. Clicks' plan allocates up to $2,640,000 for the payment of scheduled unsecured debt of $3,376,000. Clicks estimates that based on disallowance of certain insider claims ($535,000.00) as well as other claims it will be able to reduce the allowed unsecured claims to $1,763,000.00. Worst to best scenarios allowed for a dividend of anywhere from 80% to 100% of unsecured claims. While the Court cannot condone Clicks' failure to disclose its intent to seek reimbursement of its attorneys' fee it would be draconian to deny those fees in toto given the obvious benefit that has been achieved by Debtor's unsecured creditors. Also, while Applicant's request is not immaterial in absolute terms, against the backdrop of a $3,000,000.00 plan the materiality of the nondisclosure is significantly muted. Finally, the Court does not find

that the feasibility of the Clicks' plan will be seriously threatened by an allowance of Applicant's fee request. Accordingly, subject to a heightened scrutiny of its application, Clicks' failure to disclose its intent to seek recovery of its attorneys' fees does not preclude the instant application. Claimant's objection on this ground is overruled.

■ Claimant objects that Applicant has failed to demonstrate that the services performed have yielded a direct, significant and demonstrable benefit to the estate rather than to Applicant's individual client. Particularly, Claimant points to all the efforts expended by Applicant prior to the filing of the Clicks' plan and disclosure statement. Consideration of this objection requires a review of Clicks' involvement in the case.

Although the case was filed in March of 1991, Clicks was, by court order, forbidden from taking an active role in the case until January 14, 1992. Despite the prohibition of Clicks' active involvement in the case prior to this date, Applicant requests compensation for services performed as far back as March 11, 1991. In reviewing Applicant's fee request, the Court finds that on many occasions, especially before January 14, 1992, it is difficult to discern whether the service performed benefitted the estate or inured solely to the benefit of Clicks. Specifically, the Court notes that all services performed prior to November 6, 1991, the date on which Clicks first began to draft a plan and disclosure statement, are of questionable benefit to the estate. Since the burden is on Applicant to prove that each of these services conferred a direct and demonstrable benefit to the estate, any uncertainty as to the benefit of a service performed must be decided in favor of the estate and against Clicks. *Matter of Jack Winter Apparel, Inc.,* 119 B.R. 629, 636 (E.D.Wis.1990); *In re McLean Industries, Inc.,* 88 B.R. 36, 40 (Bankr.S.D.N.Y. 1988). Accordingly, the Court denies compensation and reimbursement of expenses for all activities undertaken by Applicant prior to November 6, 1991. In addition, the Court finds that all entries incurred from November 6, 1991, until January 14, 1992, which do not relate directly to the preparation of Clicks' plan and disclosure statement are similarly denied. In the aggregate, these reductions total $21,330.50 in requested fees. Claimant's objection on this ground is sustained.

■ Claimant next objects that the hourly rate requested for Applicant's lead counsel is excessive. Claimant argues that rewarding Applicant's lead counsel compensation at the rate of $215.00 per hour is inconsistent with this Court's previous ruling in *In re Cambern,* 134 B.R. 565 (Bankr. E.D.Tex.1991) which held that a maximum rate of $165.00 per hour is appropriate for bankruptcy cases pending in the Eastern District of Texas which are not specialized in nature or national in scope. This objection invokes competing concerns. First, the Court acknowledges that this case was originally filed in the Sherman Division of the Eastern District of Texas. Given the proximity of the Sherman Division to Dallas, Texas, rates significantly in excess of $165.00 are the norm. Indeed, on a Motion for Reconsideration, this Court granted compensation based on an hourly rate in excess of $200.00 per hour to the counsel for the unsecured creditors' committee due to this factor. However, the Court discerns at least one significant difference between the standing of the creditors' committee counsel and Clicks' counsel. In the former, the creditors' committee counsel was selected to represent the creditors' committee prior to the transfer of this case to this Court. In the case of Clicks, Clicks is not a victim of geography. Clicks was not originally a creditor in the case nor after achieving creditor status was Clicks allowed until January 1992, to actively participate in the case. Clicks was not an unwilling participant in Debtor's reorganization process but actively availed itself of that process—a process which was taking place in the Tyler Division of the Eastern District of Texas. Furthermore, the Court observes that counsel for Debtor was awarded fees at the rate of $150.00 per hour. Given these considerations, the Court agrees with Claimant that Clicks' lead counsel should be compensated at the

rate of $165.00 per hour. Accordingly, Clicks' fees will be reduced $15,362.50 [3] to reflect a reduction in Clicks' lead attorney's hourly rate. The objection of Claimant is sustained.

■ Claimant objects to the propriety of Applicant's request for compensation for the services performed by T.O. Bartholow, Jr. T.O. Bartholow, Jr. is a director and shareholder in Clicks. He is also an attorney employed by Applicant. Claimant asserts that T.O. Bartholow, Jr., should not be awarded compensation since his status would preclude his employment by the estate pursuant to the conflict of interest rules contained in 11 U.S.C.A. § 327 (West 1979 and Supp.1992) and Fed.R.Bankr.P. 2014, 11 U.S.C.A. (West 1979 and Supp. 1992). The Court disagrees. By definition, a creditor is not a disinterested person who could be employed by the estate. 11 U.S.C.A. § 101(14) (West 1979 and Supp. 1992) (definition of disinterested person means person who is not a creditor). In providing for the recovery by a creditor of fees and expenses for efforts which have conferred a substantial benefit on the estate, Congress necessarily waived any requirement that a creditor comply with the Code and Rules pertaining to conflicts of interest with the estate. Unlike a professional employed by the estate, a creditor need not be in a fiduciary capacity to recover pursuant to § 503(b). Therefore, as long as the benefit obtained by the estate is not overshadowed by that conflict it is irrelevant that an attorney for the creditor has a conflict of interest with the estate. The objection of Claimant is overruled.

■ Claimant objects that Applicant's application generally describes services performed, contains numerous instances of interoffice conferences, and batches services performed into daily entries thus making it difficult to determine how much time was dedicated to a particular task. With the exception of Claimant's complaint concerning excessive interoffice conferences, the Court finds that the objection is meritorious. In many areas too numerous to enumerate, Applicant has failed to specifically describe the service performed and how the service yielded a benefit to the estate. For the most part, the descriptions are exceedingly vague. In addition, this Court has always held that it is inappropriate in the context of a fee application to aggregate all the services performed in a day in a single time entry. Claimant is correct, this prevents the Court from reviewing how much time was dedicated to a particular activity. Failure to adequately describe services performed and/or how such services benefit the estate can, in appropriate circumstances, justify a denial of fees requested for such services. However, as an appropriate penalty, the Court will reduce Applicant's requested fees by the sum of $2,000.00. Claimant's objection on this ground is sustained in part and denied in part.

Claimant objects that Applicant's fee request contains numerous entries for which Applicant requests compensation which is excessive for the services described. In pertinent part, Claimant points to the relative lack of entries billed in time increments of less than .5 hours.[4] In the normal case, the Court might agree. A review of Applicant's fee request certainly facially validates Claimant's concerns. However, after review, the Court is not convinced that Applicant's billing methodology is patently excessive. Claimant's objection on this ground is overruled.

■ Claimant objects to Applicant's request for compensation for "staff" billed for 260 hours at the rate of $20.00 per hour for a total of $5,211.00. Applicant has not delineated whether the services performed by its "staff" were performed as a secretarial function or a paralegal function. Any doubt must be resolved in favor of a finding that such a request constitutes normal attorney overhead which must be absorbed in Applicant's hourly rate. Applicant's request for "staff" time is denied in toto. Claimant's objection on this ground is sustained.

**3.** This amount is based on 307.25 hours of *allowed* attorney time.

**4.** In this District, the Court requires fee requests to be billed in increments of .1 hours.

Lastly, Claimant objects that Applicant's request for reimbursement of expenses is vastly excessive. Applicant requests reimbursement of expenses in the amount of $19,008.88. As a percentage of the $121,746.25 in fees originally requested and the $88,000.00 in fees reduced in accordance with the objection of the FDIC, Applicant's percentage of expenses to fees is 15.61% and 21.59% respectively. The Court must agree that under either scenario, the requested expenses are excessive. In addition, Applicant's documentation of its requested expenses is extremely vague. In most cases, there is no demonstrable relationship between the requested expense and the benefit such expense has conferred to the estate or even what the expense was incurred for in the first instant. The Court observes that photocopy costs alone approach $12,000.00. In addition, the Court notes a requested expense reimbursement of $3,808.45 for a court reporter where there is no corresponding demonstration why the services of a court reporter were necessary in the first place.

In most cases, the Court observes that requested expenses rarely exceed five (5%) percent of the fees normally awarded in the case. Given the exigencies of this case, the Court is reluctant to award requested expenses in excess of 7.5 percent of allowed fees. Against the allowance of fees in the amount of $77,842.25, the Court hereby finds cause to award the sum of $5,838.17 in requested expenses. Claimant's objection is sustained in part and overruled in part.

For these reasons, the Court finds that Applicant has conferred a direct and demonstrable benefit to the estate. For the reasons previously stated, the Court awards compensation for these services in the amount of $77,842.25 and reimbursement of expenses in the amount of $5,838.17 for an aggregate award of $83,-680.42.