**In re OXFORD HOMES, INC., Debtor.**

**Bankruptcy No. 94–20135.**

United States Bankruptcy Court,
D. Maine.

Jan. 6, 1997.

## MEMORANDUM OF DECISION

JAMES B. HAINES, Jr., Bankruptcy Judge.

Invoking § 503(b)(3)(D) and § 503(b)(4), Peter N. Connell, a former shareholder and prepetition creditor of Oxford Homes, Inc., seeks administrative expense treatment for $85,085.00 in counsel fees and $1,830.17 in counsel's expenses that he incurred in connection with Oxford's successful reorganization. For the reasons set forth below, I conclude that Connell's request will not be granted. To do so would subvert the disclosure statement and plan confirmation process and would be fundamentally unfair to Oxford's creditors, who voted to accept Oxford's reorganization plan with no inkling that Connell would request administrative treatment for any portion of his counsel's fees.[1]

### Procedural History

Oxford filed its voluntary Chapter 11 petition on February 22, 1994. After a rocky beginning, during which the case nearly converted to Chapter 7, the reorganization proceeded under the supervision of a Chapter 11 trustee.[2] Along the way, the trustee's efforts were assisted mightily by Connell. Connell and the trustee jointly devised and proposed Oxford's reorganization plan. After a series of amendments and modifications, the joint plan was confirmed on December 23, 1994.[3]

### Facts

1. *What Connell and His Counsel Did.*

No party in interest disputes that Connell's active alliance with the Chapter 11 trustee fostered, indeed fathered, Oxford's reorganization. From a point soon after the trustee's appointment, Connell drew upon the assistance of Steven E. Cope, Esq., of Cope & Cope, a Portland, Maine, law firm specializing in bankruptcy matters. Cope

---

1. This memorandum sets forth my conclusions of law pursuant to Fed.R.Bankr.P. 7052 and Fed. R.Civ.P. 52. The facts are not in dispute.

 Unless otherwise indicated, all references to statutory sections are to the Bankruptcy Reform Act of 1978, as amended, ("Bankruptcy Code" or "Code"), 11 U.S.C. § 101 *et seq.*

2. *See* Court Doc. No. 28, Motion by Debtor Oxford Homes, Inc., to Convert Case to Chapter 7, filed 3/16/96; Court Doc. No. 29, Motion of U.S. Trustee to Appoint Chapter 11 Trustee; Court Doc. No. 35, Order for Appointment of Chapter 11 Trustee.

3. Court Doc. No. 141, Order Confirming Third Amended Joint Chapter 11 Plan as Modified.

provided comprehensive legal services to Connell, *working to negotiate and structure* Oxford's reorganization. Cope authored and reportedly revised the plan and disclosure statement that Connell and the trustee proposed.[4]

Cope asserts that his activities on Connell's behalf substantially contributed to Oxford's reorganization; reasonably required 486.2 hours of his time, billed at $175.00 per hour; and entailed reasonable expenses and disbursements amounting to $1,830.17. Cope performed additional services for Connell, generating approximately 50 hours of billable legal work, for which Connell does not seek administrative allowance.

2. *Significant Plan and Disclosure Statement Provisions.*

Throughout its evolution, the plan proposed by Connell and the trustee defined the class of "administrative expense claims" as including: (1) the Chapter 11 trustee's fees; (2) attorneys' fees incurred by the Chapter 11 trustee's counsel, creditors' committee's counsel, counsel for the debtor and any special counsel employed by the debtor; (3) fees of the trustee's and the debtor's accountants; (4) post-petition wage claims; (5) quarterly

fees due and coming due the U.S. Trustee; and (6) post-petition taxes.[5] Each version of the plan also separately classified Connell's claims, calling for mutual releases of certain claims that Connell and Oxford had against one another and providing specific treatment for Connell's remaining claims. No mention was made of Connell's intention to seek administrative allowance of any fees he owed his counsel.[6]

The original disclosure statement, and each ensuing version, described in detail the administrative claims category and the Connell claims class. Nowhere did they advert to the possibility that Connell might seek to have his attorney's fees paid "off the top" through the plan as an administrative expense.[7]

Oxford's confirmed reorganization plan required appointment of a plan trustee who, *inter alia,* holds and administers the reorganized debtor's promissory note memorializing its obligations to unsecured creditors,[8] prosecutes certain causes of action principally for the benefit of unsecured creditors,[9] and represents the unsecured creditors in all post-confirmation matters affecting their interests.[10]

---

4. In Cope's words:
> [I] formulated, drafted and circulated term sheets for the Plan as well as all three version [sic] of the Joint Plan and the Joint Disclosure Statement. As part of this area of service, [I] researched and compiled the factual information for the disclosure statements, developed the classification structure of the Plan and formulated the treatment to each class of claims and interests. In performing this task, [I] consulted and negotiated with each class of claims and interests as well as the Trustee and his counsel and the creditors committee and its counsel. [I] considered and addressed all technical and substantive objections to the Plan and Disclosure Statement.

Court Doc. No. 232, First and Final Fee Application by Cope and Cope, Attorneys for Peter N. Connell for Allowance of Compensation for Legal Services and Reimbursement of Expenses, at 4.

5. Third Amended Plan, Article 3. *See* Court Doc. No. 94, Joint Plan, Article 3; Court Doc. No. 115, Second Amended Joint Plan, Article 3.

6. Third Amended Plan, Article 18 (treating Class 14—"Claims of Peter Connell"); Second Amended Plan, Article 18 (same); Joint Plan, Article 18 (same).

7. Court Doc. No. 93, Disclosure Statement, at pp. 14 (administrative claims) and 13 (Connell class); Court Doc. No. 105, First Amended Disclosure Statement, at pp. 17 (administrative claims) and 16–17 (Connell claims); Court Doc. No. 116, Second Amended Disclosure Statement, at pp. 17 (administrative claims) and 16–17 (Connell claims).

8. The promissory note provides a fifty percent dividend to the unsecured creditors, payable in *semi-annual installments over approximately a* five-year period commencing in 1995. Third Amended Plan, Article 16.3(a).

9. The unsecured creditors are entitled to two-thirds of the *net proceeds of such causes of* action, less outstanding administrative expenses. The remaining third is to be paid to the reorganized debtor, which is to apply the funds to its note obligation to the unsecured class. Third Amended Plan, Article 16.3(b).

10. Court Doc. No. 139, Third Amended Plan of Reorganization, Articles 16 and 21.

### 3. *Post–Confirmation Developments.*

Oxford has operated successfully under the confirmed plan. In the year immediately following confirmation, I ruled on approximately ten applications for compensation filed by various professionals seeking administrative payment of fees for pre-confirmation services, and several motions seeking to compel payment of previously-allowed administrative fees.[11]

On September 6, 1996, I approved a compromise of major fraudulent transfer litigation brought by the plan trustee,[12] netting approximately $500,000.00 to be paid out under the plan.[13]

On October 29, 1996, more than twenty-two months after confirmation, Connell requested administrative allowance of all fees Cope charged Connell for pre-confirmation legal work.[14]

### Discussion

Before discussing in detail my rationale for refusing administrative treatment for Connell's counsel's fees, two preliminary points require brief discussion.

### 1. *Administrative Fee Applications by Chapter 11 Creditors: Who's the Applicant?*

The fee application before me is entitled "First and Final Application by Cope and Cope, Attorneys for Peter N. Connell, for Allowance of Compensation for Legal Ser-vices and Reimbursement of Expenses." It straightforwardly invokes § 503(b)(4) as its statutory basis. The problem, however, is that by proceeding directly under § 503(b)(4), the application ignores a necessary precondition to a § 503(b)(4) fee award.

■ A finding under § 503(b)(3)(D) that Connell, as a creditor, made a substantial contribution to Oxford's reorganization is a prerequisite to administrative allowance of his counsel's fees under § 503(b)(4). *In re American Preferred Prescription, Inc.*, 194 B.R. 721, 724 (Bankr.E.D.N.Y.1996). *See also Lebron v. Mechem Fin. Inc.*, 27 F.3d 937, 943 (3d Cir.1994); *In re Glickman, Berkowitz, Levinson & Weiner, P.C.*, 196 B.R. 291, 295 (Bankr.E.D.Pa.1996); 3 *Collier on Bankruptcy* ¶ 503.04 at 503–71 (Lawrence P. King ed., 15th ed. 1996) ("Section 503(b)(4) is designed to permit reasonable compensation for professional services rendered ... to an entity whose own actual, necessary expenses are allowable under sections 503(b)(3)(A)–(E).").[15]

■ Cope, as Connell's counsel, is not within the class of persons authorized to have their expenses allowed as administrative expenses under § 503(b)(3). The application should have been filed by Connell, the creditor. *See In re Brown*, 147 B.R. 55, 58 (Bankr.D.Mass.1992) (attorney's entitlement to reasonable compensation as an administrative expense is considered only after it is shown that the creditor's expenses are actual and necessary and that they make "a sub-

---

**11.** More recently, the plan trustee has employed several professionals to support his plan responsibilities. Consistent with retained jurisdiction under the plan, I have passed on applications for compensation for several of those professionals, primarily attorneys prosecuting causes of action reserved to the trustee under the plan. *See e.g.,* Court Doc. No. 230 (order for compensation of plan trustee's litigation counsel).

**12.** The nature and extent of those claims is detailed in *O'Donnell v. Royal Business Group, Inc. (In re Oxford Homes, Inc.)*, 180 B.R. 1 (Bankr. D.Me.1995).

**13.** *See supra* n. 9.

**14.** The application covers Cope's work for the period from April 7, 1994, through December 21, 1994. Final hearings on plan confirmation were held on December 20, 1994. I signed the confirmation order on December 23, 1994.

**15.** Section 503(b)(3)(D) states:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

> . . . . .

> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by—

> . . . . .

> (D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title.

stantial contribution in a case under chapter 11"). Under certain circumstances, it may be appropriate to consider counsel's application to have been made "on behalf of" his or her creditor client so that the court may proceed directly to its merits without multiplying proceedings by standing on formalities. *Glickman, Berkowitz, Levinson & Weiner, P.C.*, 196 B.R. at 295 n. 3.

 Thus, Cope's fee application necessarily subsumes the question whether Connell made a substantial contribution to Oxford's reorganization.[16]

In this case there is no dispute that Connell made a "substantial contribution" to Oxford's reorganization within the meaning of § 503(b)(3)(D). In objecting to the fee application, the plan trustee takes no issue with the *fact* of Connell's contribution, only with

the *extent* of related legal fees appropriately allowable as an administrative expense. Noting that Cope's application comprehends approximately 90% of the time he billed Connell in connection with Oxford's Chapter 11 case, the trustee asserts (in unhelpfully general terms) that only approximately 50% of Cope's time in the case should be allowable as an administrative expense.

### 3. *Role of the Court.*

 Notwithstanding the plan trustee's concession that as much as half of the $85,-085.00 fee application is properly allowable as an administrative expense, and notwithstanding the absence of objection from any other quarter, I must review Connell's request by my own lights. "The bankruptcy judge has an independent duty to examine the propri-

---

**16.** Like other provisions governing administrative fees allowance, § 503(b)(3)(D) creates a tension within the Code's reorganization framework. Although the section is designed to encourage meaningful creditor participation by permitting fee awards, its substantial contribution requirements foster tight judicial oversight to maximize distributions to creditors. *In re Geriatrics Nursing Home, Inc.*, 195 B.R. 34, 37 (Bankr.D.N.J.1996); *In re 9085 E. Mineral Office Bldg., Ltd.*, 119 B.R. 246, 250 (Bankr. D.Colo.1990); *In re U.S. Lines, Inc.*, 103 B.R. 427, 429 (Bankr.S.D.N.Y.1989), *aff'd*, NO. 90 CIV. 3823, 1991 WL 67464 (S.D.N.Y. Apr. 22, 1991). Administrative expenses are subject to the court's strict scrutiny. *Woburn Assoc. v. Kahn (In re Hemingway Transp., Inc.)*, 954 F.2d 1, 4–5 (1st Cir.1992); *In re S.N.A. Nut Co.*, 186 B.R. 98, 105 (Bankr.N.D.Ill.1995).

In order for a "creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102," 11 U.S.C. § 503(b)(3)(D), to show that it has made a "substantial contribution," it must prove, by a preponderance of the evidence, *9085 E. Mineral Office Bldg, Ltd.*, 119 B.R. at 249, that its actions " 'resulted in an actual and demonstrable benefit to the debtor's estate and the creditors,' " *Lebron*, 27 F.3d at 944 (quoting *Haskins v. United States (In re Lister)*, 846 F.2d 55, 57 (10th Cir.1988)). " '[S]ervices which substantially contribute to a case are those which foster and enhance ... the progress of reorganization.' " *Id.* (quoting *Pierson & Gaylen v. Creel & Atwood (In re Consol. Bancshares, Inc.)*, 785 F.2d 1249, 1253 (5th Cir.1986)). *See also In re D.W.G.K. Restaurants, Inc.*, 84 B.R. 684, 690 (Bankr.S.D.Cal.1988) ("The integrity of § 503(b) can only be maintained by strictly limiting compensation to extraordinary creditor actions

which lead directly to significant and tangible benefits to the creditors, debtor, or the estate.").

In attempting to show that a substantial contribution has been made, creditors must overcome the presumption that they are acting in their own self-interest, and not for the benefit of the estate as a whole. *In re Public Service Co. of New Hampshire*, 160 B.R. 404, 452–53 (Bankr.D.N.H. 1993). Although there is some mix of authority on this point, it is my opinion that the *existence* of motivating self-interest does not, by itself, preclude a finding that a party-in-interest made a substantial contribution. *Compare In re Lister*, 846 F.2d at 57 ("Administrative expenses incurred prior to the filing of a bankruptcy petition are compensable under 11 U.S.C. § 503(b)(3)(D), if those expenses are incurred in efforts which were intended to benefit, and which did directly benefit, the bankruptcy estate.") and *In re Am. 3001 Telecommunications, Inc.*, 79 B.R. 271, 273 (Bankr.N.D.Tex.1987) ("Legal services provided solely for the benefit of a creditor or client are not compensable from the bankruptcy estate.") with *Lebron*, 27 F.3d at 944 (recognizing that most activities of an interested party that contribute to the estate will also benefit that party, but stating that that fact alone will not preclude reimbursement); *Glickman, Berkowitz, Levinson & Weiner, P.C.*, 196 B.R. at 296 (same); *Geriatrics Nursing Home, Inc.*, 195 B.R. at 38 (although fact that creditor is acting in self-interest not sufficient basis to deny substantial contribution claim, creditor "must demonstrate that its efforts transcended self protection"); and *In re Speeds Billiards & Games, Inc.*, 149 B.R. 434, 437 (Bankr.E.D.Tex.1993) ("A creditor who has made a substantial contribution to a case is entitled to an administrative expense award even if that creditor's involvement in the case is not motivated by altruism.") (citing *In re 1 Potato 2, Inc.*, 71 B.R. 615, 618 n. 3) (Bankr.D.Minn.1987).

ety and reasonableness of fees, even if no party in interest objects to the application." 2 *Chapter 11 Theory and Practice* § 12.01 at 12:3 (James F. Queenan, Jr. et al. eds., 1994) (footnote omitted) [hereinafter "Queenan"]. *See e.g., In re Bolton–Emerson, Inc.,* 200 B.R. 725, 730 (D.Mass.1996), and cases cited *supra* n. 16.

Although I am convinced of the necessity, reasonableness, and value of Cope's work, I am unconvinced of the *propriety* of *any* administrative fee award in this instance.

### 3. *Why the Application Must be Disallowed.*

■ A plan of reorganization may not be submitted to a debtor's creditors unless and until a disclosure statement has been approved by the court as containing "adequate information." 11 U.S.C. § 1125(b). Adequate information is defined in the Code as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan . . . ;

11 U.S.C. § 1125(a)(1). As the Third Circuit recently observed:

[D]isclosure requirements are crucial to the effective functioning of the federal bankruptcy system. Because creditors and the bankruptcy court rely heavily on the debtor's disclosure statement in determining whether to approve a proposed reorganization plan, the importance of full and honest disclosure cannot be overstated.

*Ryan Operations G.P. v. Santiam–Midwest Lumber Co.,* 81 F.3d 355, 362 (3rd Cir.1996). The precise contours of "adequate information" were vaguely drawn by Congress so that bankruptcy courts might exercise their discretion to limn them in view of each case's peculiar circumstances. *See* 4 *Queenan* § 29.06 at 29:23–24 (Code's definition of adequate information intended to be flexible).[17]

■ Although what constitutes "adequate information" will vary from case to case, a good faith estimate of administrative expenses, incurred and upcoming, is a virtual constant. *See In re United States Brass Corp.,* 194 B.R. 420, 424 (Bankr.E.D.Tex. 1996); *In re Ferretti,* 128 B.R. 16, 18 (Bankr. D.N.H.1991); *In re Cardinal Congregate I,* 121 B.R. 760, 765 (Bankr.S.D.Ohio 1990); *In re Dakota Rail, Inc.,* 104 B.R. 138, 142 (Bankr.D.Minn.1989); 4 William L. Norton, Jr., *Norton Bankruptcy Law and Practice 2d* § 91:5 at 91–12 (1994). Creditors deserve to be fairly informed of the transaction costs entailed in the reorganization plan they are being asked to back.

**17.** Categories of information that ought to be considered for inclusion in a disclosure statement include:

 1. The circumstances that gave rise to the filing of the bankruptcy petition;
 2. A complete description of the available assets and their value;
 3. The anticipated future of the debtor, with accompanying financial projections;
 4. The source of the information provided in the disclosure statement;
 5. The condition and performance of the debtor while in chapter 11;
 6. Information regarding claims against the estate, including those allowed, disputed, and estimated;
 7. A liquidation analysis setting forth the estimated return that creditors would receive under chapter 7;
 8. The accounting and valuation methods used to produce the financial information in the disclosure statement;
 9. Information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor;
 10. A summary of the plan of reorganization;
 11. An estimate of all administrative expenses, including attorneys' fees and accountants' fees;
 12. The collectibility of any accounts receivable;
 13. Any financial information, valuations or *pro forma* projections that would be relevant to creditors' determinations of whether to accept or reject the plan;
 14. Information relevant to the risks being taken by the creditors and interest holders;
 15. The actual or projected value that can be obtained from avoidable transfers;
 16. The existence, likelihood and possible success of nonbankruptcy litigation;
 17. The tax consequences of the plan;
 18. The relationship of the debtor with affiliates.

*In re Ferretti,* 128 B.R. 16, 18–19 (Bankr.D.N.H. 1991).

■ As a plan proponent whose counsel was intimately involved in drafting Oxford's disclosure statement[s] and plan[s], it was incumbent on Connell to reveal any intention he entertained to seek administrative payment of his legal expenses. *Glickman, Berkowitz, Levinson & Weiner, P.C.*, 196 B.R. at 298 (weighing against granting law firm's § 503(b)(3)(D) claim was firm's failure to advise of intent to seek administrative treatment of fees in the disclosure statement); *In re Diberto*, 164 B.R. 1, 3–4 (Bankr.D.N.H. 1993) (holding alternatively that if creditors believe they have a § 503(b)(3)(D) claim they must include it in the disclosure statement or waive it). This he failed to do.

At each stage of their evolution, the plan and disclosure statement not only neglected to reveal the possibility that Connell would seek administrative payment of 90% of his attorney's fees, their comprehensive explanation of the scope of administrative claims and the extent of Connell's claims seemingly ruled out such a possibility. Connell, who asked creditors to support the plan on that record, may not now ask them to pay his fees before realizing their plan distributions.

■ The result I reach is based on the need to honor the trust creditors are entitled to repose in the disclosure, solicitation, and confirmation processes that are at the heart of Chapter 11. Because Connell, through

Cope, authored the disclosure statement and plan, it is only fair that he be bound by them. To the extent that the principle upon which I base my decision need be further defined, it represents a form of judicial estoppel. *Cf. e.g., Payless Wholesale Distribs., Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570, 571 (1st Cir.) (recognizing doctrine of judicial estoppel applies in bankruptcy proceedings; addressing unscheduled assets), *cert. denied*, 510 U.S. 931, 114 S.Ct. 344, 126 L.Ed.2d 309 (1993).[18]

My approach and conclusions here are far from novel. In *In re Seneca Oil Co.*, 65 B.R. 902 (Bankr.W.D.Okla.1986), the court denied § 503(b)(3)(D) and § 503(b)(4) requests for reimbursement from the banks who proposed the confirmed plan and from the reorganizing entity. The court held that since none of these parties disclosed that they would be seeking to recover their own costs, they would be barred from so doing. "A plan proponent or purchaser of a debtor's assets who intends to apply for reimbursement of fees and expenses must specifically estimate its costs in the disclosure statement or they will be disallowed." *Id.* at 907.[19] The court allowed for two exceptions to this rule, if "the disclosure is immaterial or the fees and expenses unforeseeable."[20]

Assuming such exceptions may apply in appropriate circumstances they do not apply here. Administrative allowance of Connell's

---

**18.** Judicial estoppel "applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted." *Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.)*, 848 F.2d 414, 419 (3d Cir.), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988). The *Payless* court instructed that judicial estoppel would have been proper grounds upon which to dismiss a complaint brought by a former Chapter 11 debtor. 989 F.2d at 571. The causes of action asserted in the complaint should have been, but were not, included as potential assets on the debtor's bankruptcy schedules. *Id.*

If Connell were not a principal plan proponent and author, I might reach a similar conclusion regarding his counsel's fees by considering the terms of the plan and its confirming order under the doctrine of *res judicata, see Monarch Life Ins. Co. v. Ropes & Gray*, 65 F.3d 973 (1st Cir.1995), or by considering whether the fee application was made "timely" within the meaning of § 503(a). I need not consider those matters in light of my holding today.

**19.** The *Seneca Oil* court also considered the impact of the moving parties' failure to disclose their intent to seek reimbursement of expenses on the feasibility requirement of § 1129(a)(11), recognizing that any such fees, if approved, would come directly from the reorganized concern's most liquid assets, thus directly affecting the plan's feasibility. 65 B.R. at 907.

**20.** At least two courts have seized on the "immaterial" language of *Seneca Oil* to allow reimbursement of undisclosed expenses. In *In re Perdido Motel Group, Inc.*, 115 B.R. 340 (Bankr. N.D.Ala.1990), the court allowed reimbursement to the attorney of successor stockholders as an administrative expense where the confirmed plan called for fixed amounts to be paid to both secured and unsecured creditors. The court held that nondisclosure was immaterial because creditors would be paid the same regardless whether the attorney's claim was paid by the corporate debtor. *Id.* at 343. In *Speeds Billiards & Games, Inc.*, 149 B.R. at 438, the court held that the materiality of nondisclosure of an $80,000 fee

attorney's fees was not an immaterial point when the disclosure statement was approved or at confirmation.[21] It is not today.[22]

Moreover, the fees being sought today were more than just "foreseeable." As of the date the disclosure statement was finally approved, the lion's share of them had already accrued.

### Conclusion

For the reasons set forth above, Peter Connell's request that his attorney's fees and expenses be paid as an administrative claim shall be, and hereby is, DENIED in full.

request was "significantly muted" by a $3,000,-000 plan, with a dividend to unsecured creditors of between 80% to 100%.

21. I will not indulge in a dollars and cents evaluation of the "significance" of the fees and expenses where the party seeking their previously undisclosed administrative allowance is a joint author and proponent of the disclosure statement and plan. Even were I to do so, I would readily conclude that the fees at issue were "material" in the context of this modest Chapter 11 case.

22. If allowed, the fees sought would reduce substantially the litigation proceeds available to unsecured creditors, directly and through *Oxford,* under the plan. *See supra* n. 9.