In re **MICHIGAN GENERAL CORPORATION, Michigan General Investment Corporation, Diamond Lumber, Inc., Debtors.**

**Bankruptcy Nos. 387–32191–HCA–11, 387–32270–HCA–11 and 387–32190–HCA–11.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

July 26, 1988.

John Flowers, Barbara J. Houser, Scott Sauder, Locke, Purnell, Rain, Harrell, Dallas, Tex., for First RepublicBank Dallas, N.A., Successor Indenture Trustee.

D.M. Lynn, Robert J. Mottern, Marilyn D. Garner, Dallas, Tex., for debtors Michigan General Corp. and Michigan General Inv. Corp.

Robin E. Phelan, Judith Elkin, Haynes & Boone, Dallas, Tex., for debtor, Diamond Lumber, Inc.

MEMORANDUM OPINION REGARDING REIMBURSEMENT OF EXPENSES OF FIRST REPUBLICBANK DALLAS, N.A.

HAROLD C. ABRAMSON,
Bankruptcy Judge.

Came on to be considered the Motion of First RepublicBank Dallas, N.A. for Allow-

ance and Payment of Actual, Necessary Expenses of Indenture Trustee, For Payment of Reasonable Compensation for Services Rendered by Professionals Employed by Indenture Trustee and for Reimbursement of Actual, Necessary Expenses of Such Professionals as Administrative Expenses, with Supporting Brief; the Court, after consideration of briefs filed in support of and opposition to the Motion, and after hearing arguments of counsel, and after a review of the applicable authorities, is of the opinion that said Motion should be granted in an amount further detailed in this opinion. The Court further finds as follows:

## I. FINDINGS OF FACT

1. Michigan General Corporation ("MGC") and Diamond Lumber, Inc. ("Diamond") filed their voluntary petitions under Chapter 11 of Title 11 of the United States Code on April 22, 1987.

2. Michigan General Investment Corporation ("MGIC") filed its voluntary petition in bankruptcy on April 28, 1987.

3. The Debtors operated as Debtors–In–Possession under Section 1107 of the Code.

4. The Debtors' Plan of Reorganization was confirmed by Order of this Court on April 1, 1988.

5. First RepublicBank Dallas, N.A. ("FRB") is the successor Trustee for an Indenture dated December 1, 1983, for the holders of $1,110,000.00 in 10¾% Senior Subordinated Debentures.

6. Section 8.07 of the Indenture provides:

The Company shall pay to the Trustee from time to time reasonable compensation for its services. The Company shall reimburse the Trustee upon request for all reasonable out-of-pocket expenses incurred by it. Such expenses shall include the reasonable compensation and expenses of the Trustee's agents and counsel.

7. FRB retained the law firm of Locke, Purnell, Boren, Laney & Neely, now known as Locke Purnell Rain Harrell ("LP"), to represent the Trustee.

8. FRB also retained Peat, Marwick, Main & Co. ("Peat Marwick") to provide accounting services to the trustee and its attorneys.

9. In its Motion, and the supplement thereto, LP seeks reimbursement of $167,-631.50 in fees and expenses for services provided to the estate of MGC, MGIC, and Diamond.

10. The Debtors object to the amounts of these fees and expenses.

11. A side issue in this case has been whether a related, non-debtor company has standing before this Court to object to Locke Purnell's fee application. The Court does not determine that controversy in this Opinion, and will, if necessary, address it in a subsequent opinion.

## II. STANDARD OF REVIEW

To properly gauge FRB's right to have its expenses paid out of the bankruptcy estate, the Court must formulate the test for determining the appropriateness of the fees. It might be noted that this is not the case of a professional, employed with Court approval, seeking compensation for its services to the estate under 11 U.S.C. § 330. Instead, this is a creditor of the estate seeking to have its expenses, incurred during the course of bankruptcy, charged to the estate. Therefore, special rules apply.

In order to establish its right to an administrative expense payable out of estate funds, FRB must meet the requirements of 11 U.S.C. § 503 of the United States Bankruptcy Code. The leading case on this type of expense in this district is *Pierson & Gaylen v. Creel & Atwood, (In re Consolidated Bancshares, Inc.),* 785 F.2d 1249 (5th Cir.1986). Fortunately, that case is extremely clear about the standard to be applied. In that case is cited the well known rule that, "a creditor's attorney must ordinarily look to its own client for payment, unless the creditor's attorney rendered services on behalf of the reorganization, not merely on behalf of his client's interest, and conferred a significant and demonstrable benefit to the debtor's estate and the creditors." *In re General Oil*

*Distributors,* 51 B.R. 794, 806 (Bankr.E.D. N.Y.1985), *quoted in, Bancshares,* 785 F.2d at 1253. Therefore, the Court examines the Motion to determine whether the Creditor's efforts provided an actual benefit to the estate.

However, in this case, the Creditor faces another limitation. The Indenture itself limits FRB to recovery of its "reasonable" expenses. This limitation is echoed in Section 503 which limits recovery to "actual and necessary" expenses. Therefore, FRB is also limited to a reasonable recovery for its expenses. It is these two standards which the Court will seek to apply in its examination of the Motion.

### III. CONCLUSIONS OF LAW

With the above standards in mind, the Court will examine the submitted Motion. The Court will attempt to apply the facts to the law throughout.

i. In its original Motion, FRB charges the estate for a $17,124.00 Annual Administrative Fee for the period of December 1987 to December 1988. Additionally, FRB charges $1,200.00 for an Annual Base Charge for Maintenance of Accounts for 1987 and 1988. Portions of both of these expenses are not allowable expenses chargeable against the estates.

■ Section 503 allows a creditor to recover expenses of preserving the estate. Before the filing of the bankruptcy, there is no estate. Therefore, pre-petition expenses are, by definition, not administrative expenses.

■ Additionally, the Debtors' confirmed Plan of Reorganization provides for the rejection of the executory Indenture Contract. Therefore, there can be no expenses subsequent to the confirmation of the plan.

Therefore, since the charges indicated include both pre-petition and post-petition charges, they are not allowable. However, it appears that FRB has already chosen to remove these amounts from their request, so they are not accounted in the present opinion.

ii. Likewise, a charge in the amount of $250.00 for Registered Interest Fee for June 1986 to December 1986 constitutes a pre-petition debt not entitled to administrative status.

■ iii. FRB attempts to charge the estate $6,465.00 for services of the accountant Peat Marwick. Since this expense is not adequately detailed, it is impossible for the Court to determine whether the services performed by these professionals were actual and necessary, or whether they were reasonable. For this reason alone, they would be disallowed, since the burden of establishing professional fees is on the party making the request. *In re Coastal Equities, Inc.,* 39 B.R. 304, 310 (Bankr.S.D. Cal.1984).

However, it is also unclear what possible benefit Peat Marwick could have been to the estate. In this case, three other well-known accounting firms were employed, including the Creditors' Committee's accountants, Spicer & Oppenheim. Since FRB was a member of the Creditors' Committee, it is difficult to understand how Peat Marwick's services would not have been duplicative of the other accountants. Therefore, the fees are not allowable.

For this reason, $6,475.00 is deducted from FRB's application.

■ iv. The Debtors have objected to 133 time entries on LP's time-sheets, which the Debtors claim represent charges for overhead expenses. The entries are for such things as "update files," etc. The Court has reviewed the entries complained of by the Debtors, and is satisfied that the amounts in question would ordinarily be considered overhead expenses for a law practice. Overhead expenses are not properly chargeable to an estate. *See, e.g., In re Bonds Lucky Foods, Inc.,* 76 B.R. 664 (Bankr.E.D.Ark.1986).

Further, the Court finds that amounts charged for individuals J. Mange and K. Koziol are primarily services of a "runner." These individuals appear to have been responsible for travelling to the court to review docket sheets, making deliveries, etc. As a law firm must hire secretaries, filing clerks, etc., a large firm must hire individuals generally called "runners." These

charges are overhead which an ordinary law firm must absorb.

FRB's application is therefore reduced by an additional $18,198.00 (representing the entire amount objected to by the Debtors, plus the amounts charged to these Debtors by the runners, less $97.50 for duplications).

v. The Debtors object to fees charged by LP in the amount of $5,344.50. The Debtors suggest that these charges are exorbitant considering the benefits obtained by the estate. For instance, they complain about 30 hours of time spent on duties described as "obtain current copy of docket sheet at Bankruptcy Clerk's Office." After a review of the complaints by the Debtors, and a review of LP's time sheets, the Court is convinced that the $5,344.50 complained of is an extremely conservative figure. However, the Court limits its inquiry to the objections presented by the Debtors.

The Court finds that $1,351.50 of the amounts objected to should be allowed. The remainder is disallowed either because it was excessive, or because it was disallowed in another objection, or for the reasons listed on the "red-lined" Exhibit B.

■ vi. The Debtors object to fees for the LP firm in the amount of $6,176.50 relating to time spent determining whether FRB was properly removed as trustee of the Indenture. The removal of a trustee is a matter between the debenture holders and the indenture trustee. As was previously noted, *Consolidated Bancshares* requires that services provided by counsel for a creditor benefit the estate. In this case, there was no benefit accruing to the estate. Therefore, FRB's application is reduced by a further $6,176.50.

■ vii. The Debtors object to another $8,666.00 in fees charged by the LP firm which the Debtors claim is duplicative of work performed by the informal committee of bondholders. Where attorneys are duplicating services, the Court must act to avoid double charging. *In re Sapolin Paints*, 38 B.R. 807, 811 (Bankr.E.D.N.Y. 1984). The Court has reviewed the hours

objected to by the committee and finds that the work performed was duplicative. Since there is no benefit to the estate, and because the work is not actual and necessary, the fees are disallowed.

■ viii. In a similar vein, Diamond objects to 34.5 hours in fees charged by LP for work which was duplicative of work performed by the Creditors' Committee. For instance, FRB spent 16 hours briefing an issue of whether to intervene in an adversary proceeding which the Creditors' Committee was already involved. Since FRB was a member of the Committee, there is no reason for them to conduct a great deal of additional research. However, the Court concludes that it was appropriate for LP to undertake some "monitoring" activities in this regard, and therefore allows 2 hours, or $200. This reduces FRB's claim by an additional $1,400.00.

The Court disallows any claim for research on collateral estoppel issues as being work completely duplicative of work performed by the Creditors' Committee. This amount reduces FRB's application by $1,350.00.

■ ix. The Debtors complain of $29,-264.00 in fees charged by the LP firm for time spent representing FRB in its capacity as a member of the Creditors' Committee. The Court finds that these fees are not compensable from the estate.

The Court generally is of the opinion that members of a Creditors' Committee may recover their expenses incurred as members of the committee. This will generally include airfare, hotel accommodations, and minor out-of-pocket expenses. However, the Court holds that services of an attorney for a *member* of a creditors' committee are not compensable because they are solely for the benefit of the creditor and are of no benefit to the estate, or to the committee. *See, In re Citizen's Mortgage Investment Trust*, 37 B.R. 813, 829 (Bankr.D.Mass. 1984) (services of member of committee not compensable because involvement was solely in creditor's interest).

In this case, it might be noted that the Creditors' Committee was represented by

Court approved counsel. Therefore, the Committee and the Debtor were not in need of any services from the LP firm. Effectively, this means that the only entity which might have benefitted from LP's presence on the Committee was the Creditor itself. Again, since the estate was not benefitted, the charges are not allowable.

Equally of concern here is the possibility that each member of a creditors' committee could hire counsel, and attempt to charge the estate. This would drastically increase the costs of administration associated with a reorganization, and consequently, reduce the possibilities of successful reorganization. The Court holds that the services of attorneys representing the interests of individual creditors on a creditors' committee are not compensable out of the estate.

Therefore, FRB's request for compensation should be reduced by an additional $29,264.00.

 x. The Debtors object to 40 hours spent by the LP firm researching the duties of a trustee in a Chapter 11 case. The Debtors argue, and the Court agrees, that this amount is unreasonably high. The Court allows 8 hours, at the average rate of $115.00 per hour, or $920.00. This has the effect of reducing FRB's request by $3,680.00.

 xi. The Debtors object to 33 hours of time spent by LP at the rate of $75.00 per hour researching tax aspects of a conversion of the case to Chapter 7. Conversion of the case was never imminent, so there is no benefit to the estate, and was unreasonable under the Indenture. FRB's request is therefore reduced by an additional $2,475.00.

 xii. LP spent 11 hours of attorney time at the rate of $150 per hour researching the relationship of a trustee to the Creditors' Committee. The Court feels that this time is excessive, and allows 3 hours, or $450.00, and reduces the application by $1,200.00.

 xiii. LP spent over 270 hours billing at a combined rate of $145 per hour preparing a "global" memorandum of fraudulent conveyances. This includes 24 hours spent researching California law, a questionable activity since no fraudulent conveyance actions were ever filed. The Court holds that some amount of time investigating the issue was appropriate, and allows 40 hours, or $5,800.00. The remainder is denied as being unreasonably high, and of no benefit to the estate.

xiv. Finally, the Debtors have objected to 210 professional hours of the LP firm, representing $25,367.50 in billable time for the reason that the time entries listed on the time sheets do not make clear the benefit of the activity to the estate. Generally, the objection is to the indefinite nature of the activity. For instance, several entries are listed as "research bankruptcy question." The Court has reviewed these objections, and finds some merit in the Debtors' objections.

The burden of establishing reasonableness of requested legal fees under § 503 is on the party requesting the fees. *In re Johnson,* 72 B.R. 115, 119 (Bankr.E.D.N.C. 1987). Section 503 requires a detailed statement of services rendered to establish the reasonableness of the fees requested. *Id.* Where insufficient descriptions are provided, the fees are subject to disallowance. *See, In re Affinito & Son, Inc.,* 63 B.R. 495, 498–99 (Bankr.W.D.Pa.1986).

In this case, the Court has reviewed the objections, and, on the redlined Exhibit C, disallows certain fees for the reasons noted on that copy. The Court disallows time entries labeled simply "Lexis research" as being indefinite, but also because it constitutes uncompensable "overhead." *In re Sapolin Paints, Inc.,* 38 B.R. 807 (Bankr. E.D.N.Y.1984). The result is that $12,855.25 in fees is allowed.[1]

### III. A COMMENT ON THE COURT'S CALCULATIONS

The parties are encouraged to check the Court's math on its calculations of legal

---

**1.** It appears that LP reduced its fee application to account for some of the objections made by Debtors. Since the Court is unable to determine which fees were withdrawn, the Court uses $25,367.50 as the original amount objected to by the Creditor.

560

fees. Minor errors in addition and subtraction will be corrected. Substantive arguments as to the propriety of the disallowance or allowance of certain fees will not be reconsidered in this manner.

The Court might also comment as to potential motions for new trial under Federal Rule 59. The Court will consider any motions for new trial under the recognized standard for approval of that type of motion—prejudicial error of fact or law. The Court has no intention of reconsidering volumes of time sheets for insubstantial complaints.

## CONCLUSION

The Court finds that $46,845.50 is the amount of money which would reasonably reimburse FRB for its expenses benefitting the estate.