**In re David Earl BEUGEN, Debtor.**

**Robert A. YOUNG, Appellant,**

v.

**David Earl BEUGEN, Appellee.**

**BAP No. NC–88–1926–RAsV.**
**Bankruptcy No. 3–86–00686 ETC.**
**Adv. No. 3–88–0351 LK.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted
March 15, 1989.

Decided May 16, 1989.

Robert A. Young, San Francisco, for appellant.

Henry Cohen, Cohen & Jacobson, Burlingame, for appellee.

Before RUSSELL, ASHLAND and VOLINN, Bankruptcy Judges.

OPINION

PER CURIAM.

FACTS

*Background*

This appeal arises out of a dispute involving the sale of two hairdressing salons to Robert A. Young ("Young") ("appellant"), Hyon T. Mun, and Khang Un Mun, Inc., by a corporation owned by the debtor David Earl Beugen ("appellee") and his wife Susan. The dispute over the sale spawned at

least 18 separate lawsuits, both in federal and state courts in Nevada and California. Most of these suits were brought by Young, who is a vexatious litigant.

Soon after the salons were sold in 1983, Young claimed that the debtor had committed fraud in the sale and had misrepresented the salons' income. Young and the other purchasers refused to pay the monthly installments owed and attempted to have the contract rescinded. They ultimately filed an action in Nevada state court on June 27, 1983, seeking damages and rescission of the sale. However, the purchasers failed to post a bond which was required as security for costs for out-of-state plaintiffs, pursuant to Nevada Revised Statutes Section 18.130(1). Upon motion by the defendants (including the debtor), the court entered an order of dismissal on May 23, 1984. No appeal was taken.

On March 12, 1986, the debtor filed his individual Chapter 11 petition. On June 20, 1986, Young filed an adversary action in the bankruptcy court against the debtor, pursuant to 11 U.S.C. § 523(a)(2), to determine the dischargeability of the contingent and unliquidated claims previously dismissed in the prior Nevada and California state court actions. Based upon the doctrines of *res judicata* and collateral estoppel, the bankruptcy court dismissed the complaint on October 26, 1987. The U.S. District Court for the Northern District of California affirmed the bankruptcy court's decision on September 1, 1988.

*Objection to Discharge*

On the same day that the debtor filed his Chapter 11 petition, the debtor's business entity, Aviva Gelato, Inc., an ice cream enterprise, also filed a Chapter 11 petition. On May 21, 1986, Young was appointed a member of the Official Creditors' Commit-

tee in the debtor's bankruptcy case. After purchasing an unsecured claim against both the corporate and individual debtors (*see infra* the "Leung claim"), Young subsequently was appointed to the Official Creditors' Committee in the corporate case, thus becoming the only common member of the two creditors' committees. Thereafter, upon Young's motion, the bankruptcy court entered an order on December 29, 1986, transferring the purchased and assigned claims to Young in the Official Creditors' Register.

On April 13, 1987, Young filed motions to dismiss both bankruptcy petitions pursuant to 11 U.S.C. § 1112(b) for cause, bad faith in filing and maintaining the petitions, and for debtor's misconduct. None of the other creditors were a party to either of these motions. The bankruptcy court granted Young's motion to dismiss as to Aviva Gelato, Inc., on June 24, 1987. However, the motion to dismiss the individual debtor's case was denied on the condition that the debtor file his disclosure statement and proposed plan of reorganization within thirty days. The debtor complied with this order, but Young nevertheless moved to strike the disclosure statement and to dismiss the case. Rather than dismissing the case, the court instead converted the debtor's case to Chapter 7 on December 4, 1987. An order to that effect was entered on March 8, 1988.

On June 27, 1988, the last date for filing objections to discharge, Young filed a complaint objecting to the debtor's discharge under virtually every subdivision of 11 U.S.C. § 727(a) and seeking to determine both the liability and dischargeability under 11 U.S.C. § 523(a)(6) of an unliquidated, contingent state-law claim for malicious prosecution.[1] On August 17, 1988, the debtor

---

**1.** The malicious prosecution action claim apparently stems from a prior adversary action in which the bankruptcy court dismissed Young's complaint with prejudice. In that proceeding, the debtor filed three counterclaims. Young, after his complaint was dismissed, successfully moved to have two of the counterclaims dismissed. The debtor, thereafter, voluntarily withdrew his remaining counterclaim. Young evidently alleges that the debtor's counterclaims

in that adversary action were maliciously prosecuted.

Because Young has not provided us with the record, we cannot find that the bankruptcy court was clearly erroneous. Moreover, we agree with Judge King's observation and statement that this malicious prosecution action by Young against the debtor "if anything, stands the true facts upside down, and [that] it seems patently impossible to discern under any set of

moved to dismiss the entire adversary proceeding on the grounds of Young's lack of standing to sue, his bad faith in filing the complaint, and his failure to state a claim upon which relief could be granted. On August 31, 1988, Young filed a motion for sanctions under Bankruptcy Rule 9011 against the debtor and thereafter wrote a letter to the debtor's counsel informing him that the motion to dismiss, in Young's view, was unsupportable and thus the reason for Young's motion for sanctions. The letter indicated that the motion for sanctions would be withdrawn if the debtor would withdraw his motion to dismiss.

A hearing was held on both motions on September 30, 1988, at which time the bankruptcy court granted the debtor's motion to dismiss the entire adversary complaint *with* prejudice and denied Young's motion for sanctions. The court's order and judgment were entered on that same day. Young timely filed his Notice of Appeal on October 7, 1988.

## ISSUE

Whether the bankruptcy court erred when it determined that Young did not have standing to object to the debtor's discharge.

## STANDARD OF REVIEW

A bankruptcy court's findings of fact are reviewed under the clearly erroneous standard and its conclusions of law are reviewed *de novo*. *Wien Air Alaska, Inc. v. Bachner*, 865 F.2d 1106, 1108 (9th Cir. 1989); Bankr.R. 8013. A motion to dismiss should not be granted unless it appears that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir.1986).

## DISCUSSION

Bankruptcy Code Section 101(9)(A) defines a "creditor" as any "entity that has a claim against the debtor at the time of or before the order for relief." A "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, secured, or unsecured." 11 U.S.C. § 101(4)(A). A "claim" also can be a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." 11 U.S.C. § 101(4)(B).

Pursuant to Section 727(c)(1), a creditor "may object to the granting of a discharge under subsection (a) of this section." It is obvious that a creditor who has a claim which will be affected by discharge can object to the discharge. The question we must resolve, however, is whether a party who was *not the original holder* of claims is nevertheless a "creditor," within the meaning of the Code, who is entitled to object to a debtor's discharge. Young contends that he is a legitimate creditor because he purchased and was assigned two existing claims against the debtor.[2] Thus, he contends that he has a right to object to the debtor's discharge.

The first claim Young purchased originally belonged to Louise Spottswood ("Spottswood claim"). Ms. Spottswood leased a rental property unit from the debtor and paid him a $1,200 security deposit. Because a window leaked and her dog was incompatible with a dog owned by another tenant, she vacated the premises and brought a small claims suit against the debtor to recover the security deposit. A judgment was rendered on May 10, 1983, and Ms. Spottswood was awarded $753.38.

On November 14, 1985, Young solicited and obtained an assignment of the Spotts-

---

facts that [the debtor] has maliciously prosecuted Mr. Young when, if anything, quite the reverse would be the case."

**2.** A third "claim" involved the assignment by CBC Advertising, Inc. to Young of CBC's right to collect a $33,000 judgment against the debtor. Such assignment supposedly was in consideration of Young's research and assistance in CBC's

attempts to enforce the judgment. However, when CBC realized that its claim might be eliminated through the offsetting of claims by the debtor against Young, the claim was reassigned to CBC. (It should be noted that Young solicited the CBC claim without any license or authority to act as a collector.)

wood claim. Although a balance of only $374.47 remained, Young paid $500 for this claim against the debtor. Thereafter, Young undertook numerous, extensive and extreme acts to enforce his claim, including subpoenaing bank records and TRW reports, and examining the debtor and his wife. On January 16, 1986, at the City Hall in San Francisco, California, before Judge McCabe, counsel for the debtor tendered to Young $400 cash as payment in full satisfaction of the Spottswood claim. Young refused the tender, claiming that he had already spent more in his efforts to collect the judgment than what he paid for it. Young currently asserts that the debtor owes him $1,100 on the Spottswood claim.

The other claim Young acquired by assignment originally belonged to Galen Leung ("Leung claim"). After the debtor filed his Chapter 11 petition, Young solicited Mr Leung and paid him $500 for a note of $5,000, plus interest, that the debtor and Aviva Gelato gave to Leung on July 9, 1986. In a declaration on July 23, 1986, Young stated that the assignment was in consideration of assistance rendered to Mr. Leung. He did not mention that he had paid $500 for the note. However, during a hearing on that same date in the then existing Aviva Gelato bankruptcy case, Young admitted to the court that he in fact paid $500 for the note. Nevertheless, in the instant case, the bankruptcy court entered an order on December 29, 1986, substituting Young as transferee of record of the Leung claim in the debtor's Official Creditors' Register.

At the hearing on the motion to dismiss and motion for sanctions, the debtor argued, and the court agreed, that since Young was not the *original* holder of his two claims, he was not entitled to object to the debtor's discharge. In its oral decision, the bankruptcy court stated that:

[t]his is an extraordinary case in view of the very large numbers of lawsuits between these parties, nearly all of which have been commenced by Mr. Young. As I have indicated before, *it appears that Mr. Young is attempting to use the Court as a whipping post to inflict punishment on the defendant, and that Mr. Young has reached the point of becoming a vexatious litigant.*

A large body of his claims have previously been disposed of in this Court. *Mr. Young is now purchasing claims of others apparently in an attempt to pursue litigation against the defendant [debtor].*

*The right to object to a debtor's discharge is not a marketable commodity which may be purchased by one party from another in order to inflict further punishment and discomfort upon a debtor.*

Appellee's Excerpt of Record on Appeal at 266–67 (emphasis added).

In reaching this decision, the bankruptcy court had before it an extensive record, comprised mostly of documents pertaining to the numerous actions brought by Young against the debtor. A common theme throughout the course of dealings among these parties is Young's attempts to harass and make life miserable for the debtor. Young's efforts to collect on the $374.47 unpaid balance due on the Spottswood claim is an example of such behavior. Young subpoenaed three banks and savings and loans for the production of documents and records, subpoenaed TRW records pertaining to the debtor and Aviva Gelato, subpoenaed business and personal records of the debtor, his wife and their corporation, examined orally the debtor and his wife, and levied on the corporate bank account of Aviva Gelato, against which he had no judgment. Young did all of this to collect on the judgment, in spite of the fact that the debtor offered him $400 in cash. Young now claims that, due to his collection efforts, he is entitled to $1,100 on the debt.

Young acted similarly after he obtained the Leung claim. He filed an adversary complaint in the Aviva Gelato bankruptcy case alleging fraud/deceit, conversion, and a constructive trust of the $5,000 loaned by Leung. His action also sought to disregard the corporate entity of Aviva Gelato and to impose individual liability against

the debtor and his wife. Finally, Young's complaint sought to determine this debt nondischargeable pursuant to Section 523(a)(2) and for exemplary damages. Upon motion by the debtor and his wife, the bankruptcy court dismissed Young's complaint.

The most poignant example of Young's attempts to harass the debtor is found in the declaration of Lisa Anne Smith, who was an employee of Cook's Flavoring Company, an unsecured creditor of Aviva Gelato. In her sworn declaration, Ms. Smith stated that:

> [o]n or about March 13, 1986, I was contacted by a man who gave his name as Robert Young.... Mr. Young said he was an individual, not an attorney, and that he was not representing himself as an attorney. He said he was a professional litigator and asked me what problems Cook's Flavoring had with Aviva Gelato. He said that Dave Beugen [the debtor] filed bankruptcy ... and that Dave Beugen was his favorite person to sue. He told me that he was going to ruin Dave Beugen. This [last sentence] may not have been his exact wording but it is the gist of what he said to me.... When Mr. Young was describing to me his suits against Mr. Beugen, he was quite emotional in that he appeared to be extremely happy and joyous about his litigation.

Appellee's Excerpt of Record on Appeal at 394–95.

■ Based upon the record before us, particularly those portions indicating Young's conduct and actions pertaining to the purchased Spottswood and Leung claims, we hold that the bankruptcy court's determination that Young purchased claims of others in order to pursue litigation against the debtor is not clearly erroneous. We believe the court's statement that "it appears that Mr. Young is attempting to use the court as a whipping post to inflict punishment on the defendant [debtor], and that Mr. Young has reached the point of becoming a vexatious litigant" is accurately reflected in the record. In affirming the bankruptcy court's decision, we wish to adopt its language regarding the purchasing of claims for improper purposes. Therefore, we hold that "[t]he right to object to a debtor's discharge is not a marketable commodity which may be purchased by one party from another in order to inflict further punishment and discomfort upon the debtor."

Young asserts that the bankruptcy court, when it denied his motion for sanctions, did so based upon the same erroneous reasons as those upon which it granted the debtor's motion to dismiss Young's complaint. The court simply stated that:

> [t]he motion for sanctions is denied, the denial, it would be obvious, for the reasons given [by the court] in support of the ruling on the motion to dismiss.

Young's motion for sanctions was grounded in Young's belief that the debtor's arguments in support of his motion to dismiss were "meritless" and "not even reasonably arguable," and were "legally untenable and without any statutory or case law authority whatsoever." As discussed *supra*, we hold that the bankruptcy court properly dismissed Young's complaint. We hold that such decision did have proper legal and factual authority. As such, Young's motion for sanctions against the debtor for bringing the motion to dismiss was properly denied.

■ The debtor urges this Panel to impose sanctions against Young pursuant to Federal Rule of Appellate Procedure 38 for bringing a frivolous appeal. In particular, he emphatically stresses the alleged "vexatious and harassing nature of Young's proceedings" and points out that the prosecution of a vexatious appeal constitutes a frivolous appeal under Rule 38. *See Johl v. Johl*, 788 F.2d 75 (2d Cir.), *cert. denied*, 479 U.S. 858, 107 S.Ct. 201, 93 L.Ed.2d 132, *reh'g denied*, 479 U.S. 978, 107 S.Ct. 482, 93 L.Ed.2d 425 (1986).

Federal Rule of Appellate Procedure 38 authorizes this Panel to award damages and single or double costs to the appellee if we determine that an appeal is without merit. *In re Wood*, 96 B.R. 993, 997 (9th Cir.BAP 1988); *In re Burkhart*, 84 B.R. 658, 661 (9th Cir.BAP 1988). We find that

this appeal is part of a continued harassment by Young against the debtor. Therefore, we award sanctions in the form of attorney's fees and double costs. We request the debtor's counsel to submit a tabulation and calculation of fees and costs incurred in defending this appeal.

The decision of the bankruptcy court is AFFIRMED.