**In re GERIATRICS NURSING HOME, INC., Debtor.**

**In re NORTH JERSEY NURSING AND CONVALESCENT CENTER, INC., Debtor.**

**Bankruptcy Nos. 94–27616 (NLW), 94–27620 (NLW).**

United States Bankruptcy Court, D. New Jersey.

April 19, 1996.

---

Cole, Schotz, Meisel, Forman & Leonard by Michael D. Sirota, Hackensack, New Jersey, for Health Resources of Wayne, Inc.

Ravin, Sarasohn, Cook, Baumgarten, Fisch & Rosen by Richard D. Trenk, Roseland, New Jersey, for debtors.

NOVALYN L. WINFIELD, Bankruptcy Judge.

THIS MATTER comes before the court on Health Resources of Wayne, Inc.'s ("Health Resources"), motion for legal fees and costs pursuant to §§ 503(b)(3)(D) and (4) of the United States Bankruptcy Code ("Code"), 11 U.S.C. et seq. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference by the United States District Court of New Jersey dated July 23, 1984. Moreover, this is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

### BACKGROUND

Health Resources, a creditor in the jointly administered bankruptcy cases of Geriatrics Nursing Home, Inc., and North Jersey Nursing and Convalescent Center, Inc., ("Debtors"), seeks reimbursement of its costs and expenses incurred in connection with their formulation of a plan of reorganization and disclosure statement in the Debtors' Chapter 11. Health Resources submits it made a "substantial contribution," to the bankruptcy case, and is therefore entitled to have its "actual and necessary expenses," reimbursed out of the estate as an administrative expense. The relevant portions of the Code, §§ 503(b)(3)(D) & (b)(4), state:

(b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title, including—

(3) the actual, necessary expenses ... incurred by—

(D) a creditor, an indenture trustee, an equity security holder, or a committee representing creditors or equity security holders other than a committee appointed under section 1102 of this title, in making a substantial contribution in a case under chapter 9 or 11 of this title.

(4) reasonable compensation for professional services rendered by an attorney ... of an entity whose expense is allowable under paragraph (3) of this subsection, based on the time, nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney....

The Debtors filed their Chapter 11 cases on November 3, 1994. At a status conference on December 7, 1994, the Debtors advised the court and other interested parties that they would file a plan of reorganization and disclosure statement prior to the expiration of the exclusivity period contained in Code § 1121. Consistent with their representation, they filed a plan of reorganization and a disclosure statement on January 31, 1995. The plan proposed to fully satisfy creditor claims over a period of five (5) to ten (10) years. The Debtors thereafter sought an extension of the exclusivity period for solicitation of acceptances of their plan. First Fidelity Bank, N.A. ("First Fidelity") opposed the relief and cross moved to terminate the exclusivity period. On April 4, 1995 this court rendered its oral decision which denied the Debtors' motion and granted

First Fidelity's motion to terminate exclusivity. After the court denied their motion for reconsideration on April 18, 1995, the Debtors lodged an appeal with the District Court.

Shortly after the court's initial ruling terminating exclusivity, Health Resources purchased an unsecured claim in the amount of $260.10. On April 24, 1995, Health Resources filed a competing plan of reorganization and disclosure statement. Their plan provided for satisfaction of all classes of creditor claims, in full, immediately, and with interest. Health Resources' plan also provided for it to control the reorganized debtor after confirmation. Competing plans of reorganization and disclosure statements were also filed by Van Dyk Health Care, Inc. ("Van Dyk") and First Fidelity.

Thereafter, the plan proponents amended their plans and disclosure statements several times. Ultimately, on August 7, 1995, this court approved the adequacy of Health Resources' Third Amended Disclosure Statement, Van Dyk's Fourth Amended Disclosure Statement and the Debtors' Fourth Amended Disclosure Statement as containing adequate information within the meaning of Code § 1125(a). However, on September 14, 1995 the District Court entered an order which reversed the bankruptcy court's decision to terminate exclusivity. The District Court's decision mooted consideration of any plan other than that of the Debtors. On September 21, 1995, this court entered an order confirming the Debtors' Fourth Amended Plan.

Health Resources submits that its efforts in proffering a competing a plan resulted in the dramatic improvement in the treatment accorded creditors under the Debtors' confirmed plan. On this basis Health Resources submits it made a "substantial contribution" to the estate and thus is entitled, under Code §§ 503(b)(3)(D) and (4), to an administrative claim for reimbursement of the expenses it incurred in formulating the competing plan and disclosure statement. The improved treatment of creditors in the Debtors' plans is summarized below:

| Class | Treatment under Original Plan | Treatment under Confirmed Plan |
| --- | --- | --- |
| Priority Tax Claims | Paid over a period of 6 years with interest on the unpaid portion at a rate to be agreed upon or determined by the Bankruptcy Court. | Paid in full on the Initial Distribution Date. |
| Municipal Lien Claim | Paid in full over 5 years, with interest at 9%. | Paid in full on the Initial Distribution Date. |
| First Fidelity's Secured Claim | Paid over 10 years based on a 30 year amortization schedule with interest at 9% and a balloon payment at the end of the 10th year. | Paid in full on the Initial Distribution Date. |
| Union Claims | Paid in full with interest over 32 months. | Paid in full on the Initial Distribution Date with 9% interest. |
| Unsecured Claims | Paid over a 5 year period, without interest. | Paid in full on the Initial Distribution Date with 6% interest. |

### DISCUSSION

The Debtors object to the application of Health Resources on various grounds. Firstly, they complain that Health Resources' efforts to confirm a competing plan actually delayed confirmation of the Debtors' plan and resulted in increased administration expenses. Secondly, they submit that Health Resources acted solely in its own interests. Thirdly, because Health Resources acquired a *de minimis* claim for the sole purpose of filing a plan under which it would acquire the Debtors' business, the Debtors argue that it should not be treated as a creditor of the estate.

■ The determination as to whether Health Resources' participation in these Chapter 11 cases amounted to a substantial contribution within the meaning of Code § 503(b)(3)(D) is essentially a factual inquiry. *Matter of Consolidated Bancshares, Inc.*, 785 F.2d 1249, 1253 (5th Cir.1986). Further, the burden of proof is on the applicant to demonstrate by a preponderance of the evidence that it has made a substantial contribution in

the case. *In re 9085 E. Mineral Office Bldg., Ltd.,* 119 B.R. 246, 249 (Bankr.D.Colo.1990).

Courts have long recognized the section 503(b)(3)(D) is informed by dual and somewhat competing considerations. Although the section is designed to encourage meaningful creditor participation in the reorganization process, it also embodies the need to minimize administration expenses in order to maximize the estate for creditors. *9085 E. Mineral,* 119 B.R. at 250, fn. 10. In keeping with these objectives the Third Circuit Court of Appeals has stated that "the applicable test is whether the efforts of applicant resulted in an actual demonstrable benefit to the debtor's estate and the creditors." *Lebron v. Mechem Financial, Inc.,* 27 F.3d 937, 944 (3d Cir.1994) (quoting *In re Lister,* 846 F.2d 55, 57 (10th Cir.1988)). However, the court in *Lebron* provided a further refinement of the test by its observation that:

> Inherent in the term "substantial" is the concept that the benefit received by the estate must be more than an incidental one arising from activities the applicant has pursued in protecting his or her own interests. Creditors are presumed to be acting in their own interests until they satisfy the court that their efforts have transcended self-protection (citations omitted).

27 F.3d at 944.

Thus, the inquiry which this court must make is whether the facts reveal that (i) Health Resources' efforts conferred an actual, demonstrable benefit on the Debtors' estates and the creditors, and (ii) if such a benefit was conferred, whether it was merely incidental to Health Resources' efforts to serve its own interests.

### A. *Actual Demonstrable Benefit*

The first inquiry is easily answered in the affirmative, and is demonstrated by the dramatic improvement in the treatment of creditors under the Debtors' confirmed plan. The confirmed plan paid all creditors in full on the effective date of the plan. The Debtors' first plan provided for full payment, but over a period of time that ranged from five to ten years, depending on the class. While it is true that Health Resources was not the sole proponent of a competing plan, it does not follow that its efforts did not affect the Debtors' decision to revise their plan. It is flawed

logic to argue, as do the Debtors, that because two or more parties cause an actual and demonstrable benefit that their efforts cancel each other out. Rather, the court has the task of determining the degree of each parties contribution and whether their respective efforts were substantial.

In support of their position the Debtors cite *In re Michigan General Corp.,* 102 B.R. 554 (Bankr.N.D.Tex.1988) for the proposition that actions taken by a creditor which are duplicative of services undertaken by others are not compensable. However, the court finds the *Michigan General* case unhelpful because it is largely factually inapposite to the present matter. In *Michigan General,* an indenture trustee, who also was a member of the official creditors' committee, sought reimbursement for the fees incurred by its attorneys and accountants. The court could discern no service that was not duplicative of the services rendered by the creditors' committee's professionals. Thus, the court found that the services rendered to the indenture trustee were solely for its own benefit. 102 B.R. at 558–59. The court's ruling is well-grounded and consistent with the policy of minimizing administrative expenses so as to maximize the estate.

To the extent that Health Resources seeks reimbursement for services which were merely duplicative of services performed by the creditors' committee the *Michigan General* holding might be applicable. However, the vast majority of the services for which reimbursement is sought concern the competing plan proffered by Health Resources. Simply because there were other competing plans does not mean that Health Resources' efforts were duplicative of those other efforts.

Equally unpersuasive is the Debtors' argument that Health Resources should not be viewed as a creditor because it became a creditor by purchasing a claim post-petition. The Debtors urge that such a result is dictated by the holding of *In re Beugen,* 99 B.R. 961, 963 (9th Cir. BAP 1989). The Debtors contend that under the *Beugen* holding an entity that purchases a claim for the purpose of litigating against the Debtor is not a creditor in the context of the bankruptcy case.

Though not explicitly stated, presumably the Debtor's position is that acquiring a claim in order to file a plan constitutes litigation against the Debtor.

In *Beugen,* an individual who had a long history of litigating with the debtor, purchased claims both in the debtor's individual Chapter 11 case and a related corporate case. After the individual debtor's Chapter 11 case converted to a Chapter 7 case, the creditor filed an adversary proceeding objecting to the debtor's discharge. Debtor's counsel moved to dismiss the adversary on the ground that the creditor was not the original holder of the claim, and thus was not entitled to object to the debtor's discharge.

The bankruptcy court granted the motion, holding that the creditor was not the original holder of the claim and that the right to object to a discharge "is not a marketable commodity which may be purchased by one party from another in order to inflict further punishment and discomfort upon a debtor." 99 B.R. at 965. After an extensive review of the creditor's pre-bankruptcy and post-bankruptcy conduct, the BAP agreed with the bankruptcy court that the creditor was a vexatious litigant, and affirmed the bankruptcy court's determination regarding the non-marketability of the right to object to a debtor's discharge. *Id.*

The court infers from the Debtors' citation to *Beugen* that they likewise wish this court to view the purchase of $260.10 claim by Health Resources as having an improper purpose simply because Health Resources filed a competing plan. The court finds *Beugen* inapplicable. Firstly, the BAP did not decide whether a purchaser of a claim is a creditor as defined by the Bankruptcy Code. It never reached the issue. It rested its decision on the apparent improper purpose for which the claim was used. 99 B.R. at 965. Additionally, it is not sensible to argue that a purchaser of claim who takes an assignment of the claim does not wholly step into the shoes of the assignor. Neither the Bankruptcy Code nor the Bankruptcy Rules restrict the ability of an assignee to assert all the rights of a creditor. In the absence of inequitable conduct, the court cannot discern any basis for limiting the rights of an assignee of a claim.

It might be said that under *Beugen* a purchaser of a claim cannot utilize its newly acquired creditor status to subvert the purpose of bankruptcy relief. Thus, as in *Beugen,* a party should not be permitted to use an acquired claim to continue vexatious litigation. Such conduct is clearly at odds with the Code's fresh start policy. Similarly, in a Chapter 11 context, it seems logical that a competitor cannot use a purchased claim to file a competing plan that would result in elimination of the debtor as a competitor. Such a purpose is equally at odds with the reorganization goals of Chapter 11. However, absent some improper purpose it is not readily apparent why the purchaser of even a *de minimis* claim should not be able to assert all creditor rights, including the right to file a competing plan. Filing for Chapter 11 relief cannot, and should not insulate the debtor from every peril· of the marketplace. The Code is not designed solely as a debtor's remedy.

## B. *Incidental Nature of the Benefit*

Health Resources' substantial contribution motion must ultimately fail, however, because the record is amply clear that, notwithstanding the actual and demonstrable benefit conferred upon creditors, Health Resources was acting primarily in its own interest, and thus the benefit conferred upon the estate was merely incidental. *See Lebron,* 27 F.3d at 944.

A review of the time records annexed as an exhibit to the Health Resources application does not reveal any service which can be viewed as directed at benefitting any entity other than Health Resources. The time records detail counsel's efforts relating to (i) acquisition of the claim and performance of due diligence, (ii) objection to the debtor's motion for reconsideration, (iii) preparation of the competing plan and disclosure statement, (iv) objections to the plans and disclosure statements filed by other proponents, (v) negotiations with the creditors' committee and other plan proponents, including the Debtors, and (vi) attendance at various court hearings. It is readily evident to the court

both from the time records and the positions it took at various court hearings that Health Resource's efforts were not directed at furthering the reorganization or even at protecting its interests as a creditor, but rather were directed at acquisition of the nursing home in furtherance of its own business purposes.

It is true that because a creditor is acting in their self-interest is not a sufficient basis to deny a substantial contribution claim. "Nevertheless, the purpose of § 503(b)(3)(D) is to encourage activities that will benefit the estate as a whole, and in line with the twin objectives of § 503(b)(3)(D), 'substantial contribution' should be applied in a manner that excludes reimbursement in connection with activities of creditors and other interested parties which are designed primarily to serve their own interests". *Lebron*, 27 F.3d at 944.

In support of its substantial contribution claim, Health Resources asserts that it embarked upon efforts to acquire the Debtors' business with the expectation that its legal fees would be reimbursed if its plan was confirmed. However, such a statement confirms rather than negates Health Resources' self interest in attempting to acquire the Debtors' business. It merely makes plain that Health Resources intended to recoup the costs associated with its acquisition.

▆ To succeed on a substantial contribution claim a creditor must demonstrate that its efforts transcended self protection. For example, *Ex parte Roberts*, 93 B.R. 442 (D.S.C.1988) in the district court affirmed the bankruptcy court's allowance of a substantial contribution claim to a creditor, Petroleum World, whose repeated objections to the debtor's plans resulted in a plan which provided for payment of interest on creditor claims. Petroleum World held a claim for some $95,000, which claim comprised thirty six percent (36%) of the total unsecured claims against the estate.

In affirming the bankruptcy court's decision the district court determined that Petroleum World's efforts were critical to the successful confirmation of a plan. *Id.* at 444–45. Regarding Petroleum World's primary motivation, the court noted that, "[t]here is evidence to support the proposition that Petro-

leum World was protecting the interests of all unsecured creditors rather than just its own interests," and, "the services provided by Petroleum World and the expenses incurred were not those necessary to prosecute its individual underlying claim but rather were only those which would inure to the benefit of all unsecured creditors." *Id.* at 445. *See also In re Stoecker*, 128 B.R. 205 (Bankr.N.D.Ill.1991) (a creditor's attorney who participated in the filing of an involuntary petition and obtaining the appointment of a trustee, was accorded an administrative claim); *In re W.G.S.C. Enterprises, Inc.*, 47 B.R. 53 (Bankr.N.D.Ga.1985) (creditor's attorney who objected to a settlement between debtor and an estate creditor, and objected to the plan of reorganization, was entitled to reimbursement); *In re McLean Industries, Inc.*, 88 B.R. 36 (Bankr.S.D.N.Y.1988) (creditor's counsel awarded compensation for "substantial contribution" after counsel objected to a sale of stock which resulted in stock being sold for some $1,150,000 more than it would have been under the original agreement).

By contrast, where creditor self-interest appears to dominate a creditor's actions courts have not allowed substantial contribution claims. In particular where it appears that the goal of the creditor has been acquisition of the debtor entity or its assets, courts have uniformly rejected administration expense claims for substantial contribution under Code § 503(b)(3)(D) and (4). In the case of *In re Public Service Co. of New Hampshire*, 160 B.R. 404 (Bankr.D.N.H.1993), the United Illuminating Company ("United") sought reimbursement for its participation in an auction bidding process undertaken pursuant to debtor's plan of reorganization. Although United was an unsuccessful bidder, it claimed that its participation resulted in bidding up the price for the debtor's assets and produced a $300,000,000 net gain for the estate. *Id.* at 451. In denying United's motion, the court referred to "the law of economic self interest," pursuant to which, "[c]reditors normally act in their economic self-interest and any incidental benefit to the estate is an indirect by-product of their pursuit of their own self interest." *Id.* at 452. The court noted that from the outset Unit-

**40**

ed's goal was to acquire the debtor and profit thereby. *Id.* at 453. The court found this goal incompatible with an intent to primarily benefit the estate. *Id.*

Similarly, in a case whose facts closely resemble the matter *sub judice, In re American 3001 Telecommunications, Inc.,* 79 B.R. 271 (Bankr.N.D.Tex.1987), a creditor who purchased a claim and filed an unsuccessful competing plan of reorganization which sought to put the creditor in control of the reorganized debtor, was denied an administrative expense under §§ 503(b)(3)(D) & (4). The *3001* court viewed the creditor's efforts as analogous to the efforts of an unsuccessful corporate raider, and held that, "legal services provided solely for the benefit of a creditor or client are not compensable from the bankruptcy estate." *Id.* at 273 (citations omitted). *See also In re Frog and Peach, Ltd.,* 38 B.R. 307 (Bankr.N.D.Ga.1984) (unsuccessful bidder for estate property denied reimbursement although their bidding efforts increased the value ultimately realized by the estate).

The same "law of economic self-interest," discussed in *Public Service of New Hampshire* and noted in *3001,* applies to the instant case as well. A review of the attorney fee application submitted along with Health Resources' motion leaves little doubt as to their motivation in this case. Viewed in its entirety, the record before the court indicates that Health Resources made a business decision to attempt to takeover the Debtors via the filing of a competing plan of reorganization. These facts do not overcome the presumption of self-interest enunciated in *Lebron,* 27 F.3d at 944 ("creditors are presumed to be acting in their own self interests until they satisfy the court that their efforts have transcended self-protection."). Therefore, their motion must be denied.

## CONCLUSION

For the reasons stated in the foregoing opinion, the Application of Health Resources for reimbursement of their costs and fees is denied.