**In re Harold LYNN, Debtor.**

**No. 95–B–45013(RDD).**

United States Bankruptcy Court, S.D. New York.

Dec. 4, 2002.

---

The Catafago Law Firm, P.C., New York City, by Jacques Catafago and Kaye

Scholer LLP, New York City, by Paul J. Curran and Michael Lynn, for Harold Lynn.

Otterbourg, Steindler, Houston & Rosen, P.C., New York City, by Peter Feldman, for Goyakla, Inc.

### DECISION AND ORDER ON DEBTOR'S MOTION TO INVALIDATE ASSIGNMENT OF CLAIM

ROBERT D. DRAIN, Bankruptcy Judge.

Harold Lynn, the above-captioned debtor ("Lynn" or the "Debtor"), has moved for entry of an order under section 105(a) of the Bankruptcy Code and Bankruptcy Rule 3001 invalidating the assignment of a claim in his chapter 7 case from Nationwide Auction Co. ("Nationwide") to Goyakla, Inc. ("Goyakla") on the ground that Goyakla, or, more specifically, Goyakla's principal, John E. Silverman ("Silverman"),[1] engaged in champerty.

Because Bankruptcy Rule 3001(e), which governs the assignment of bankruptcy claims, does not confer standing on the Debtor to object to the assignment, the Debtor's motion is denied. Even if the Debtor had standing, moreover, he has not established that Goyakla or Silverman engaged in champerty. Finally, while Rule 3001(e) does not deprive the Debtor of standing to object to Goyakla's *exercise* of a creditor's rights that may aggrieve him or, as Goyakla acknowledges, limit the Court's power to regulate Goyakla's *improper use* of the purchased claim if such improper use occurs, to date Goyakla and Silverman have done nothing improper in

---

1. For purposes of this Decision, Silverman and Goyakla are treated as interchangeable. Goyakla has no other assets than the assigned claim and is completely under Silverman's control. Thus, in discerning Silverman's in-

tent when the claim was purchased, which is the only relevant reason to examine the relationship between Goyalka and Silverman, Goyakla's actions can be attributed to Silverman.

the bankruptcy case with the purchased claim warranting such relief.

## FACTS

This motion is the latest development in a remarkably rancorous four-and-a-half-year dispute between Lynn and Silverman originally relating to a condominium developed by Lynn in which Silverman and his wife purchased a unit. Fortunately, the details of the underlying dispute are irrelevant with the exception that, notwithstanding the considerable animus between Silverman and Lynn, Silverman did not have a claim against Lynn's chapter 7 estate until Goyakla bought one.

Goyakla bought the claim from Nationwide on April 24, 2002, and filed a notice of transfer of claim under Bankruptcy Rule 3001(e)(2) on May 20, 2002. Goyakla contends that the claim, which is unsecured, is in the principal amount of $177,107.50.[2] Goyakla paid $50 for it. After filing the notice of transfer, to which there was no objection, Goyakla and Silverman have not filed any further pleadings in this chapter 7 case until responding to the present motion.

Silverman's hostility to Lynn did, however, indirectly influence the chapter 7 case before he bought the claim. In 2000 Silverman provided the chapter 7 trustee with information regarding the value of Lynn's condominium unit that led the chapter 7 trustee to seek to reopen an earlier settlement with Lynn. Later, Silverman provided the FBI with information that led to an investigation of Lynn for alleged bankruptcy crimes. That investigation (although apparently not ultimately relying on Silverman's tips) resulted in Lynn's July 9, 2002 guilty plea to violation of 28 U.S.C. § 152(a) for having fraudulently concealed from the chapter 7 trustee and creditors Lynn's receipt of tax refunds.

Since buying the claim, Silverman has done two other things that have discomfited Lynn. First, he has urged the chapter 7 trustee in the light of Lynn's guilty plea to seek to reopen the trustee's second settlement with Lynn (this March 2000 settlement resolved, among other things, the issues regarding the condominium valuation raised by Silverman) and the trustee's third settlement with Lynn (this January 2002 settlement resolved the trustee's claim for turnover of the tax refunds before he knew about the related indictment). The trustee filed such a proceeding, which is *sub judice*, in October 2002. Based on the trustee's conduct of that proceeding, however, it is clear that Goyakla's new standing as a creditor did not dictate the trustee's pursuit of litigation and that the chapter 7 trustee is a free agent seeking the best interests of all of Lynn's creditors. (The same can be said for the effect on the trustee of Silverman's activities before Goyakla purchased Nationwide's claim.)

Second, Silverman has sought to speak as a "victim" of Lynn's bankruptcy fraud at Lynn's upcoming sentencing hearing in the District Court. The day before Lynn filed the motion, District Judge Hellerstein issued an order giving Silverman the chance to present in writing his standing as a victim in the criminal case and his views on the appropriate sentence and reserving decision on whether Silverman

2. Shortly before the hearing, Lynn learned, as, apparently, did Goyakla, that Nationwide had received a payment from a co-obligor partner of Lynn's reducing the claim to approximately $120,000. At the hearing, Lynn contended for the first time that Nationwide's settlement with Lynn's partner satisfied the claim. Goyakla disputed this. While these issues may be relevant to a later objection to the claim, they are not relevant to Lynn's present motion to invalidate the claim assignment for champerty.

may speak at the sentencing. It appears that Lynn's motion to invalidate the claim assignment was motivated in large part by the desire to deprive Silverman of creditor status and, therefore, a podium in the District Court.

The facts remain, however, that Silverman (a) has played no meaningful role, for good or ill, in this chapter 7 case since Goyakla's purchase of the claim and (b) his activities before purchasing the claim, although highly annoying to Lynn and apparently giving Silverman peculiar personal satisfaction,[3] benefitted the estate.

Silverman asserts that he bought Nationwide's claim to make a profit, not with the sole intention of litigating against Lynn. That is, Silverman contends that he believed when he bought the claim—at a time, he points out, well before Lynn's indictment for bankruptcy fraud, let alone a sentencing hearing was scheduled—that unsecured creditors would eventually recover from Lynn's estate significantly more than the pittance for which he bought the claim. While it is clear that Silverman's hostility far exceeds the ordinary creditor's, and one may think that there are better ways to spend time and money, Lynn has not established that Silverman bought the claim only to harass Lynn in court.

## DISCUSSION

### The Debtor Lacks Standing to Object to the Assignment

Bankruptcy Rule 3001(e) governs the assignment of claims, the Bankruptcy Code being silent on the claim assignment process. Before its amendment on August 1, 1991, Bankruptcy Rule 3001(e)(2) (which governs the assignment of claims after a

proof of claim has been filed, like Nationwide's) invited fairly open-ended court review of proposed claim transfers by requiring court approval after notice to parties in interest and a hearing. That changed when the Rule was amended:

> If a claim other than one based on a publicly traded note, bond or debenture has been transferred other than for security after the proof of claim has been filed, evidence of the transfer shall be filed by the transferee. The clerk shall immediately notify the alleged transferor by mail of the filing of the evidence of transfer and that objection thereto, if any, must be filed within 20 days of the mailing of notice or within any additional time allowed by the court. If the alleged transferor files a timely objection and the court finds, after notice and a hearing, that the claim has been transferred other than for security, it shall enter an order substituting the transferee for the transferor.

Fed. R. Bankr.P. 3001(e)(2).

The 1991 amendment to Rule 3001(e) was expressly intended to curtail judicial oversight of the claim assignment process itself by eliminating notice to third parties and limiting the court's role to determining disputes between assignee and assignor, the only party entitled to notice of the purported transfer. Under the current version of Rule 3001(e)(2), if the assignor does not timely object to the proposed transfer as unenforceable under nonbankruptcy law, the assignment becomes effective without court approval. As the Advisory Committee Note to the 1991 Amendment states:

> Subdivision (e) is amended to limit the court's role to the adjudication of dis-

---

**3.** There is no allegation that Silverman tried to extort anything from Lynn in connection

with his dealings with the chapter 7 trustee.

putes regarding transfers of claims.... If a claim has been transferred other than for security after a proof of claim has been filed, the transferee is substituted for the transferor in the absence of a timely objection by the alleged transferor. In that event, the clerk should note the transfer without the need for court approval. If a timely objection is filed, the court's role is to determine whether a transfer has been made that is enforceable under nonbankruptcy law.

■ Given Bankruptcy Rule 3001(e)(2)'s plain language, as confirmed by the Advisory Committee Note, third parties, including the Debtor, do not have standing to object to a claim assignment itself. *See Viking Assocs. v. Drewes (In re Olson),* 120 F.3d 98, 102 (8th Cir.1997): "The language of the Rule is mandatory and directs the court to substitute the name of the transferee for that of the transferor in the absence of a timely objection from the transferor." *See also Troy Sav. Bank v. Travelers Motor Inn,* 215 B.R. 485, 490–91 (N.D.N.Y.1997); *In re Univ. Towers, Inc.,* 227 B.R. 727, 729 (Bankr.W.D.Mo.1998); *In re Crosscreek Apartments,* 211 B.R. 641, 646 n. 7 (Bankr.E.D.Tenn.1997).

■ The Debtor's reliance on several cases dating from both before and after the 1991 amendment of Bankruptcy Rule 3001(e) for the proposition that the Court can use its equitable power under section 105(a) of the Bankruptcy Code to invalidate a claim assignment is misplaced. Those authorities confirm only that the Court has the power under various sections of the Bankruptcy Code to regulate *attributes* of an assigned claim if the assignee uses the claim improperly. *See,*

*e.g.,* 11 U.S.C. § 510(c) (equitable subordination), 11 U.S.C. § 1126(e) (designation of votes on a chapter 11 plan); *Citicorp Venture Capital, Ltd. v. Committee of Creditors Holding Unsecured Claims,* 160 F.3d 982, 991 (3d Cir.1998); *In re Dune Deck Owners Corp.,* 175 B.R. 839, 845–46 (Bankr.S.D.N.Y.1995); *see also American United Mutual Life Ins. Co. v. City of Avon Park,* 311 U.S. 138, 146, 61 S.Ct. 157, 85 L.Ed. 91 (1940) (applying general equitable principles to remedy insider misconduct in buying claims). The standards for such relief, indeed, are less rigorous than establishing champerty, as discussed below. Perhaps most pertinent to Lynn, such remedies include the ability to deny an objection to a debtor's discharge brought by a claim purchaser who is simply a vexatious litigant. *Young v. Beugen (In re Beugen),* 99 B.R. 961, 965 (9th Cir. BAP 1989), *aff'd,* 930 F.2d 26 (9th Cir. 1991).[4] Contrary to Goyakla's assertion, even though Lynn's estate apparently is hopelessly insolvent, Lynn would have constitutional standing to object to Goyakla's improper use of the assigned claim against him, if Goyakla were ever to so use the claim. *Kabro Assocs. v. Colony Hill Assocs.,* 111 F.3d 269, 273 (2d Cir.1997). *Cf. In re 60 East 80th St. Equities, Inc.,* 218 F.3d 109, 115–6 (2d Cir.2000) (chapter 7 debtor lacks standing to participate in litigation over estate assets unless there could be a surplus after full payment of creditors). However, Lynn has been deprived of standing to object to the claim assignment itself by the plain language of Rule 3001(e)(2). *In re Olson,* 120 F.3d at 102, quoting *Official Comm. of Equity Sec. Holders v. Mabey,* 832 F.2d 299, 302 (4th

4. As stated by the Ninth Circuit B.A.P. in *Beugen* when it denied the assignee's objection to discharge and awarded sanctions, "the right to object to a debtor's discharge is not a marketable commodity which may be purchased by one party from another in order to inflict further punishment and discomfort upon the debtor." 99 B.R. at 965.

Cir.1987), *cert. denied,* 485 U.S. 962, 108 S.Ct. 1228, 99 L.Ed.2d 428 (1988).

Silverman and Goyakla have done nothing with the purchased claim in the chapter 7 case to merit the invocation of any remedy against the assigned claim's attributes, and it therefore would be an unwarranted intrusion on the District Court to weigh in on whether Silverman's after-the-fact acquisition of a claim makes him a "victim" of the Debtor's bankruptcy crime entitled to any credence at the sentencing hearing.

### The Debtor Has Not Established Champerty

■  Even were Lynn's motion deemed a claim objection instead of a request to invalidate the assignment (Silverman's actual or potential use of the claim against Lynn sufficiently aggrieving Lynn to confer standing to make such an objection), Lynn has not carried his burden that Silverman committed champerty.[5]

■  There is no doctrine of champerty in New York except as provided in a criminal statute, New York Judiciary Law sections 488–9,[6] and the courts historically have interpreted that criminal statutory bar narrowly.  *Richbell Information Servs., Inc. v. Jupiter Partners L.P.,* 280 A.D.2d 208, 215, 723 N.Y.S.2d 134, 139 (App.Div. 1st Dep't.2001).  As the New York Court of Appeals held in 1882, "a mere intent to bring a suit on a claim purchased does not constitute the offense; the purchase must be made for the very purpose of bringing such suit, and this implies an exclusion of any other purpose." *Moses v. McDivitt,* 88 N.Y. 62, 65 (1882). The Court of Appeals recently reconfirmed these principles, stating that "in the modern setting of sophisticated financial transactions and complicated investment strategies" champerty is perhaps even more narrowly confined, so that the court must follow a " 'prudent approach' that is consistent with the limited scope of the champerty doctrine as it originally appeared and developed in the Anglo–American legal system." *Bluebird Partners, L.P. v. First Fidelity Bank,* 94 N.Y.2d 726, 734–5, 709 N.Y.S.2d 865, 731 N.E.2d 581 (2000).[7]  To prove champerty, it must

---

**5.**  The parties do not dispute that an order voiding the assigned claim would be proper if Silverman or Goyakla engaged in champerty. *Refac Intern., Ltd. v. Lotus Dev. Corp.,* 131 F.R.D. 56, 58 (S.D.N.Y.1990).

**6.**  Section 488 of New York's Judiciary Law, relied on by Lynn because Silverman is an attorney, provides in relevant part:

An attorney or counselor shall not:

A.  Directly or indirectly, buy, take an assignment of or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange or other thing in action, with the intent and for the purpose of bringing an action thereon.

B.  By himself, or by or in the name of another person, either before or after action brought, promise or give ... a valuable consideration to any other person, as an inducement to placing, or in consideration of having placed, in his hands, or in the hands of another person, a demand of any kind, for the purpose of bringing an action thereof, or of representing the claimant in pursuit of any civil remedy for the recovery thereof. . . .

C.  An attorney or counselor who violates the provisions of this section is guilty of a misdemeanor.

New York Judiciary Law section 489, which pertains to non-attorneys and was interpreted in *Bluebird Partners* and *Banco de la Nacion, infra,* contains the same operative phrase "with the intent and for the purpose of bringing an action thereon."

**7.**  *Bluebird Partners* explained the origins of champerty in medieval anti-usury concepts and stated that, as developed in New York, the champerty law was "largely directed toward preventing attorneys from filing suit merely as a vehicle for obtaining costs, which at the time included attorneys fees."  94 N.Y.2d at 734, 709 N.Y.S.2d 865, 731 N.E.2d 581.

be shown that the "foundational intent to sue on the claim must at least have been the primary purpose for, if not the sole motivation behind, entering into the transaction." *Id.*, 94 N.Y.2d at 736, 709 N.Y.S.2d 865, 731 N.E.2d 581. Indeed, champerty "requires that the acquisition be made with the intent and for *the* purpose (as contrasted to *a* purpose) of bringing an action or proceeding." *Id.* (emphasis in original). *See also Elliott Assocs., L.P. v. Banco de la Nacion*, 194 F.3d 363, 379 (2d Cir.1999), in which the Second Circuit held that although the plaintiff clearly had bought a distressed claim with the intent to sue on it, such suit was "incidental and contingent" to satisfaction of a valid debt and, therefore, the assignment was not champertous.

Lynn contends that because Silverman is not an institutional investor in distressed debt like the assignees in *Bluebird Partners* and *Banco de la Nacion*, the policy of those decisions to protect today's debt trading markets (*Bluebird Partners*, 94 N.Y.2d at 734–7, 709 N.Y.S.2d 865, 731 N.E.2d 581; *Banco de la Nacion*, 194 F.3d at 380) should not apply here. The large and active market in distressed claims—streamlined by the amendment of Bankruptcy Rule 3001(e)—is not confined, however, to institutional investors; the leading cases therefore cannot be distinguished on this basis.

It remains that Lynn has not established Silverman's primary, if not exclusive, intention when buying the claim to litigate against and harass Lynn in the courts. The fact that Goyakla bought the claim well before the indictment, let alone the sentencing hearing, and the fact that Goyakla has not filed any pleading in the chapter 7 case until responding to Lynn's current motion argue against the narrow intention necessary to establish champer-

ty, and support Silverman's assertion that he paid the $50 as an investment.

Accordingly, the Debtor's motion to invalidate the claim assignment from Nationwide is DENIED.

IT IS SO ORDERED.