### In re UNIVERSITY TOWERS, INC., Debtor.

**Bankruptcy No. 97–42863.**

United States Bankruptcy Court,
W.D. Missouri,
Kansas City Division.

Oct. 15, 1998.

Mark A. Shaiken, Stinson, Mag, Frizzel, Kansas City, MO, for Beal Bank.

James E. Bird, Polsinelli, White, Vardeman & Shalton, Kansas City, MO, for Jackson County.

### MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

The County of Jackson County, Missouri (the County) agreed to transfer its claim in this Chapter 11 bankruptcy case to Beal Bank, SSB, (Beal) by written agreement dated April 16, 1998. The County now seeks rescission of that written agreement. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (K), and (N) over which the

Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## FACTUAL BACKGROUND

Debtor University Towers, Inc. (UTI) owns and operates a 16 floor apartment building in Kansas City, Missouri.[1] The building, which contains 246 apartments, was constructed in 1972 and was originally operated as Admiral Towers. A First Deed of Trust to secure a Note from the Department of Housing and Urban Development (HUD) in the amount of $5,105,200 was recorded on May 12, 1970. A Second Deed of Trust to secure a HUD Note in the amount of $517,-700 was recorded on September 14, 1972. UTI acquired Admiral Towers by assuming the First and Second Deeds of Trust and accompanying Notes on November 2, 1988. It then entered into a Modification Agreement with HUD on March 1, 1989, whereby HUD deferred all principal payments on the Notes until March 1, 1990. Beginning on that date, UTI was to pay HUD the sum of $39,001.19 per month. UTI failed to make the payments as required in the Modification Agreement.

UTI also failed to pay County real estate taxes for the years 1986 through 1991, City real estate taxes for the years 1987 through 1991, and business personal property taxes for the years 1988 through 1991. On May 14, 1992, the County, the City of Kansas City, Missouri, and UTI executed a Settlement Agreement, Release and Covenant Not to Sue (the 1992 Agreement). The 1992 Agreement was executed for Jackson County by the County Counselor. The purpose of the 1992 Agreement was to resolve all out-standing legal actions then pending.[2] The 1992 Agreement provided that the back taxes to be paid by UTI would be limited to a total sum of $1,125,173.15.[3] The 1992 Agreement further provided that the sum of $1,125,-173.15 is "deemed to include any and all amounts that might be ·claimed with respect to tax years ·prior to 1992, including but not limited to penalties, interest, collection costs, attorney's fees, publication expenses and other costs, charges and fees of any kind or nature whatsoever related to such taxes."[4] The terms for repayment of the fixed and limited back taxes were as follows:

> [c]ommencing in 1995, with the first payment due prior to the end of December, 1995, UTI will pay the Back Taxes ..., but only out of its 'Available Funds.' 'Available Funds' for the purpose of this Agreement shall be deemed to be eighty percent (80%) of the excess (if any) of UTI's annual revenue over its expenses for the fiscal year ended most recently prior to each such December.[5]

No payment has been made by UTI to the County on the back taxes, since UTI had no annual revenue in excess of expenses prior to filing this Chapter 11 bankruptcy case. Beal purchased the Notes and Deeds of Trust from HUD on October 31, 1995. Beal then filed a lawsuit in the Circuit Court of Jackson County, Missouri in July of 1997 to enforce the remedies contained in the Notes and Deeds of Trust. In response, Debtor filed this Chapter 11 bankruptcy petition on July 29, 1997. Pursuant to UTI's proposed Plan, Beal's claim now totals $7,309,556.38. This Court held a valuation hearing on March 26, 1997, and valued the apartment building owned by UTI at $4,200,000.[6]

On March 5, 1998, the County filed a proof of claim classified as an unsecured priority claim for business and real estate taxes in

---

**1.** UTI also leases and operates a 50 bed skilled nursing facility adjacent to the apartment building. The operation of the skilled nursing facility is not relevant to the issue before the Court in this proceeding.

**2.** County's Ex. # 1.

**3.** *Id.* at ¶ 2(a).

**4.** *Id.* at ¶ 2(b).

**5.** *Id.* at ¶ 3.

**6.** Doc. # 94.

the amount of $1,125,713.13.[7] On April 16, 1998, the County and Beal executed a Sale and Assignment Agreement (the 1998 Agreement).[8] The 1998 Agreement provided that UTI was still indebted to the County in the amount of $969,128.29.[9] The 1998 Agreement also provided that the County's tax debt was secured by one or more tax liens. The 1998 Agreement further provided that the County and Beal "have agreed that Assignor [the County] will sell, transfer, and assign to Beal Bank all of the Assignor's right, title, and interest in and to the Assigned Claim."[10] To that end, Beal purchased the County's claim against UTI for the sum of $112,500.[11] The 1998 Agreement was signed by one of Beal's loan officers and by Michael LaVota, an Assistant County Counselor. On April 30, 1998, Beal sent notice of the transfer to the County as required by Bankruptcy Rule 3001(e)(2).[12] Beal also notified UTI and the United States Trustee of the transfer. On May 14, 1998, the Director of Revenue for the County objected to the transfer of the County's claim arguing that the transfer was void as a matter of law.[13] On May 28, 1998, the County filed an amended proof of claim in this case. The amended proof of claim characterizes the claim as a secured claim for $1,110,509.05 and an unsecured priority claim for $14,664.08.[14] Beal objected to the amended proof of claim on the basis that the County had no standing to file an amended proof of claim after it transferred all its right, title, and interest in the claim to Beal in the 1998 Agreement.[15] UTI, which was concerned that transfer of the County's claim to Beal would hamper its ability to get its Plan of Reorganization confirmed, filed Suggestions in Support of the County's Objection to the Transfer of Its Claim (the Suggestions).[16] Beal moved to strike those suggestions on the ground that UTI has no standing to object to the transfer of the County's claim.[17]

■ On June 8, 1998, this Court held a hearing on the County's objection to the claim transfer, Beal's motion to strike the Suggestions in support of that objection, and Beal's Motion to Strike the Amended Proof of Claim of Jackson County. As announced at the hearing, Rule 3001(e) provides only that "[i]f the alleged transferor files a timely objection" within 20 days of the mailing of notice by the clerk, the Court will schedule a hearing.[18] Moreover, the Eighth Circuit has held that only the claims transferor may object to a transfer,[19] the purpose of the rule being simply to verify that the transfer in fact took place. Beal's motion to strike UTI's Suggestions will, therefore, be sustained.

Since the hearing, this Court entered an Order denying confirmation of debtor's Plan of Reorganization (the Plan) for reasons not related to the County's claim. Beal has now proposed its own Plan, which once again calls on this Court to determine whether the County is able to rescind the action of its representative in transferring the claim to Beal.

Given the existence of the 1992 Agreement, and the lack of dispute as to its validity, the only issue for this Court to decide is whether the County, as represented by the Assistant County Counselor, had the power to sell its rights under the 1992 Agreement to Beal.

■ The County argues that it is the County Legislature, and not an Assistant

---

7. Claim # 22.

8. Case No. 98–4100, Ex. A.

9. *Id.* at ¶ D. This sum does not include the portion of the back taxes that is owed to the City of Kansas City, Missouri, which is $156,044.86.

10. *Id.* at ¶ F.

11. *Id.* at ¶ 2.

12. Doc. # 130.

13. Doc. # 137.

14. Claim # 23(c).

15. Doc. # 151.

16. Doc. # 156.

17. Doc. # 157.

18. Fed.R.Bankr.P. 3001(e).

19. *Viking Assoc., L.L.C. v. Drewes (In re Olson),* 120 F.3d 98, 102 (8th Cir.1997).

County Counselor, that has the authority to compromise taxes.[20] In response, Beal contends that if the 1992 Agreement was valid, then the 1998 Agreement should be held valid because both represent a compromise of taxes. The problem with this argument is that the 1992 Agreement did not represent a reduction or compromise in the tax due, but instead created a formula by which the amount of tax due would be paid. The 1992 Agreement was executed by the County Counselor under his Charter authority to "have charge of and conduct all of the civil law business of the county."[21] The 1998 Agreement, by contrast, provides that the tax of $968,128.29 will be satisfied by a payment of $112,500. Clearly, the 1998 Agreement involves a compromise of tax liability, rather than an agreement as to how the tax liability is to be paid. The County Counselor, who is appointed by the County Executive,[22] and not by the County Legislature, has not been authorized to compromise tax claims on behalf of the Legislature. Therefore, the authority to do so remains with the Legislature.

■■■ Assuming then that the Assistant County Counselor was not authorized to enter into the 1998 Agreement, the issue is whether the County should be estopped from challenging the validity of that agreement. In Missouri, estoppel is to be applied to governmental entities only in exceptional cases, where necessary to prevent manifest injustice.[23] Here, no such manifest injustice exists. Certainly, if the County now contended that the 1992 Agreement was invalid, Beal could argue that a manifest injustice would be caused because it purchased the HUD note in reliance on the existence of the 1992 Agreement. Because of the pending bankruptcy proceeding, no parties have changed their position in reliance on the validity of the 1998 Agreement. The UTI Plan, which presumed that the 1998 Agreement was invalid, has been rejected by the

Court. And the Beal Bank Plan, which is pending, provides for payment of the County's claim, pursuant to the 1992 Agreement, if the 1998 Agreement is found to be invalid. No manifest injustice will be caused by a finding that the 1998 Agreement is invalid.

In sum, I find that the 1998 Agreement between Jackson County and Beal Bank is invalid. Therefore, the objection of Beal Bank to the claim of Jackson County will be overruled, and the objection of Jackson County to the transfer of its claim to Beal Bank will be sustained. A separate Order consistent with this Memorandum Opinion will be entered this date.

---

20. Charter, Art. II § 8.

21. Charter, Art. V. § 7.

22. Charter, Art. V. § 6. Note that the County Executive is elected by the voters, and not appointed by the Legislature.

23. *Kennedy v. City of St. Louis,* 749 S.W.2d 427 (Mo.App.1988). See also, Kenneth D. Dean, *Equitable Estoppel Against the Government—The Missouri Experience: Time to Rethink the Concept,* 37 St. Louis U.Law J. 63, 67 (1992).